A09A1897. IN RE PETITION OF MORGAN MARKS.
(684 SE2d 364)

ELLINGTON, Judge.
In this stepparent adoption case, Morgan Marks filed a petition to terminate the parental rights of Michele Marks, the biological mother of ten-year-old G. M. M., and to adopt the girl. The Superior Court of Carroll County granted the petition after finding that Michele Marks had abandoned her daughter by failing to communicate with her in a meaningful and supportive manner and by failing to pay child support while she (the mother) was incarcerated. Michele Marks appeals, contending that there was insufficient

---

evidence to support the termination of her parental rights. Because we find that there was insufficient clear and convincing evidence to show that Michele Marks' failure to communicate with and support G. M. M. was without justifiable cause, or that the circumstances which caused G. M. M.'s deprivation were likely to continue, we reverse the court's order terminating Michele Marks' parental rights. In light of this ruling, the court's grant of Morgan Marks' petition to adopt G. M. M. is reversed by operation of law.

> On appeal from an order terminating parental rights based on an adoption petition, we construe the evidence favorably to the trial court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost. We do not weigh the evidence or assess witness credibility, but defer to the trial court's factual findings and affirm unless this standard is not met.

(Citations and punctuation omitted.) *Johnson v. Taylor*, 292 Ga. App. 354 (665 SE2d 49) (2008).

So viewed, the relevant evidence showed that Michele Marks (hereinafter, "the mother") married Jeffrey Marks ("Marks") in 1993, and their daughter, G. M. M., was born in July 1999. The couple divorced in June 2002, and the court granted custody of G. M. M. to Marks. The court granted the mother supervised visitation with the child and ordered her to pay Marks $40 per week for childcare costs in lieu of child support. Instead of having the mother pay for childcare, however, Marks allowed the mother to watch G. M. M. on weekdays while he worked.

It is undisputed that both the mother and Marks used illegal drugs until 2002, when G. M. M. was three years old. Marks testified that he stopped using illegal drugs in 2002, but the mother continued to abuse drugs. Even though Marks knew about the mother's drug abuse, he continued to allow her to visit with G. M. M. from 2002 to 2004.

In January 2004, the mother was arrested and charged with trafficking in methamphetamine and other crimes. Two months later, Marks married Morgan Smith (hereinafter "the petitioner"). Marks subsequently filed a petition for modification of the mother's visitation rights because he was concerned about the effect of the mother's drug use and lifestyle on G. M. M. The trial court granted the modification in April 2004, suspending the mother's visitation rights until she demonstrated that she was drug free for six consecutive months. The court also ordered her to pay at least $40 per week in child support.

In August 2005, the mother pled guilty to possession with intent to distribute methamphetamine, OCGA § 16-13-30 (b); four counts of possession of a controlled substance, OCGA § 16-13-30 (a); and possession of a firearm during the commission of a crime involving the possession of a controlled substance, OCGA § 16-11-106 (b) (4). She was incarcerated from August 2005 until January 2009. Although the mother had no contact with G. M. M. during the first few months of her incarceration, it is undisputed that, between February 2006 and her release from prison in January 2009, the mother sent cards or letters to G. M. M. approximately four times a month.

Marks admitted, however, that he did not tell G. M. M. about all of the cards and letters that her mother had sent to her because, in his opinion, "to tell [G. M. M.] that her mother is trying to come back in her life after she knows that her mother's never been in her family is very detrimental to a nine-year-old, her stability and her mental thoughts." He further testified that there was "no way" he would show her the cards and letters at this time because, in his opinion, it was not an appropriate time to tell a nine-year-old girl that her mother had been trying to communicate with her when "the only thing she knows is the family that she has now," meaning him, his wife (the petitioner), and their family. In addition, he admitted that, when G. M. M. asked him why her mother was not involved in her life, he told her that "her mother had problems with drugs and she chose a lifestyle, that lifestyle, over her."

The evidence also shows that, at the time of the February 3, 2009 hearing on the adoption petition, the mother had been out of prison for only two weeks. The mother admitted that she had acted very foolishly and made very poor choices prior to her arrest, and she stated that she took full responsibility for her mistakes. It is undisputed that, during her three and a half years of incarceration, the mother completed extensive occupational training, parenting classes, and several months of rehabilitation for substance abuse. Specifically, she became certified as a First Class firefighter, earned several other firefighting certifications, including training as a first responder, in first aid and CPR, and in accident victim extrication, assisted the local fire department, and helped fight wildfires in south Georgia in 2007. She also completed Middle Georgia Technical College's 15-credit-hour course in computer technology and customer service. In addition, she completed nine months of intensive drug rehabilitation, which culminated in training on how to re-enter society and look for employment.

Following the hearing on the adoption petition, the trial court granted the petition, finding that the mother had effectively abandoned G. M. M. by failing to communicate with her in a meaningful and supportive manner and by failing to pay child support while

incarcerated. Although the court acknowledged that the mother had regularly sent three or four letters per month to the child during her incarceration and that Marks had withheld the letters in an exercise of "parental discretion," it made no finding as to whether the mother's failure to communicate with and support G. M. M. was without justifiable cause.

On appeal, the mother contends that the trial court erred in terminating her parental rights and granting the petition for adoption, arguing that there was insufficient evidence to support the court's findings. For the following reasons, we agree.

Generally, a stepparent may adopt his or her spouse's child only if the biological parent whose rights will end with the adoption "voluntarily and in writing surrenders all of his [or her] rights to the child to [the stepparent] for the purpose of enabling [the stepparent] to adopt the child." OCGA § 19-8-6 (a) (1). If the biological parent refuses to surrender his or her parental rights, OCGA § 19-8-10 provides that the court may still grant the stepparent's petition to adopt the child if it finds, inter alia, that there is clear and convincing evidence that the parent has abandoned the child or that the parent,

> for a period of one year or longer immediately prior to the filing of the petition for adoption, *without justifiable cause*, has significantly failed: (1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or (2) To provide for the care and support of that child as required by law or judicial decree[.]

(Emphasis supplied.) OCGA § 19-8-10 (a) (1), (b). See also *Johnson v. Taylor*, 292 Ga. App. at 354 (this Court applies the clear and convincing evidence standard when considering the sufficiency of evidence in adoption cases involving the termination of parental rights). "It is the petitioner['s] burden to prove that termination of the mother's parental rights is warranted, including the lack of justifiable cause." (Punctuation and footnote omitted.) *Smallwood v. Davis*, 292 Ga. App. 173, 175 (1) (664 SE2d 254) (2008).

If the petitioner meets that burden of proof and the court finds that one of the above situations exists, then the court must also determine whether the proposed adoption is in the best interest of the child. OCGA § 19-8-10 (a) (1), (b). With regard to the best interest test in adoption cases, the trial court has very broad discretion with which this Court will not interfere except in cases of plain abuse. *Bateman v. Futch*, 232 Ga. App. 271, 274 (2) (501 SE2d

615) (1998). However,

> [a] court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational or *even moral advantages* elsewhere. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship.

(Citation and punctuation omitted; emphasis in original.) *Blackburn v. Blackburn*, 249 Ga. 689, 694 (2) (292 SE2d 821) (1982). The requirements of Georgia's adoption statutes are mandatory and must be strictly construed in favor of the natural parents, because the application thereof results in the complete and permanent severance of the parental relationship. *Coleman v. Grimes*, 250 Ga. App. 880, 890 (2) (553 SE2d 185) (2001).

1. *There is insufficient clear and convincing evidence to support a finding that the mother abandoned G. M. M. under OCGA § 19-8-10 (a) (1).* In order to authorize a finding of abandonment under OCGA § 19-8-10 (a) (1), there must be clear and convincing evidence of an "actual desertion, *accompanied by an intention to sever entirely, as far as possible to do so, the parental obligations growing out of the [parent/child relationship], and forego all parental duties and claims.*" (Punctuation and footnote omitted; emphasis in original.) *Hall v. Coleman*, 264 Ga. App. 650, 653 (1) (592 SE2d 120) (2003). The relevant undisputed evidence in this case, as recounted above, does not support a finding that the mother ever acted, or failed to act, with the intention to sever entirely her parental obligations and claims to G. M. M. Thus, the trial court was not authorized to grant the adoption petition, pursuant to OCGA § 19-8-10 (a) (1), based upon a finding that the mother had abandoned G. M. M. See *Hall v. Coleman*, 264 Ga. App. at 653 (1) (finding that, although the evidence authorized an adoption pursuant to OCGA § 19-8-10 (b), evidence that the biological father objected to the adoption and actively participated in the related proceedings demonstrated that he did not intend to sever entirely his parental obligations and, therefore, did not support a finding that he had abandoned his child or authorize the court to grant an adoption under OCGA § 19-8-10 (a)).

2. *There is insufficient clear and convincing evidence to support an adoption under either subsection of OCGA § 19-8-10 (b).*

(a) As noted above, when a biological parent refuses to surrender his or her parental rights, an adoption is still authorized under OCGA § 19-8-10 (b) (1) if there is clear and convincing evidence that the parent, *without justifiable cause*, significantly failed to commu-

244

nicate or to *make a bona fide attempt to communicate* with his or her child in a meaningful, supportive, parental manner *for a period of one year or longer immediately prior to the filing of the adoption petition.*[1] Because the petitioner had the burden of proof in this case, she not only had to present clear and convincing evidence that the mother failed to communicate or attempt to communicate with G. M. M. for the requisite statutory period, but she also had to show that such failure was "without justifiable cause." OCGA § 19-8-10 (b) (1); *Smallwood v. Davis*, 292 Ga. App. at 174-175 (1); *Thaggard v. Willard*, 285 Ga. App. 384, 389 (2) (646 SE2d 479) (2007); *McCollum v. Jones*, 274 Ga. App. 815, 822 (3) (a) (2) (619 SE2d 313) (2005) (physical precedent only). This she failed to do.

> [T]he words "without justifiable cause" as used in [OCGA] § 19-8-10 (b) are constitutionally significant.[2] The Due Process Clause gives a parent substantial protection of his or her parental rights requiring that clear and convincing evidence of unfitness be shown before a natural parent's rights in his child may be terminated.

(Punctuation and footnote omitted.) *Smallwood v. Davis*, 292 Ga. App. at 175 (1).

In the instant case, pretermitting whether there was clear and convincing evidence that the mother lacked justifiable cause for her failure to communicate with G. M. M. in a meaningful, supportive, parental manner before she was incarcerated and during the first few months of her incarceration, the evidence clearly showed that the mother had regularly sent cards and letters to her daughter for at least two years prior to the filing of the adoption petition. Her efforts to communicate with G. M. M. were thwarted, however, by Marks, who unilaterally decided that allowing the child to read the letters from her mother was not in the child's best interest.

Under these circumstances, the petitioner has failed to demonstrate that the mother's failure to communicate with the child for the requisite statutory period was without justifiable cause. See *McCollum v. Jones*, 274 Ga. App. at 822-823 (3) (a) (2) (physical precedent only) (because the evidence showed that, for 18 months immediately prior to the adoption petition, the petitioner was

---

[1] The petitioner filed the adoption petition on August 25, 2008. Therefore, for the purposes of OCGA § 19-8-10 (b), the relevant period of time is August 26, 2007 through August 25, 2008.

[2] See *Thorne v. Padgett*, 259 Ga. 650, 651-652 (386 SE2d 155) (1989) (concluding that it would be a denial of due process to allow a court to sever the rights of a parent based upon his or her failure to provide financial support without giving that parent an opportunity to explain why he or she has failed to provide such support).

stonewalling the mother's efforts to communicate, the clear and convincing evidence of unjustified failure to communicate was not presented); cf. *Johnson v. Taylor*, 292 Ga. App. at 357-358 (1) (because the biological father, who was incarcerated, could have written or telephoned his son, but failed to do so, the trial court was authorized to find that such failure was without justifiable cause).

(b) Similarly, an adoption is not authorized under OCGA § 19-8-10 (b) (2) unless there is clear and convincing evidence that the parent, *without justifiable cause*, significantly failed to provide for the care and support of G. M. M. as required by law or judicial decree *for a period of one year or longer immediately prior to the filing of the adoption petition*.[3]

> Justifiable cause for the failure to pay child support may be found in situations where the parent has been unable to earn income due to incarceration, mental illness, mental incapacity, hospitalization, or other circumstances beyond [his or her] control. Each case must be decided on its own circumstances. . . . [I]ncarceration does not per se give rise to justifiable cause for failure to pay support[;] rather it is simply one factor to be considered.

(Citations and punctuation omitted.) *McCollum v. Jones*, 274 Ga. App. at 821 (3) (a) (1) (physical precedent only).

Although the mother does not dispute that she failed to pay child support during her incarceration, she also testified that she was not able to earn any income while incarcerated. The petitioner failed to present any evidence to the contrary. In fact, the petitioner failed to present any evidence of the mother's financial condition during her incarceration. Thus, the petitioner did not meet her burden of showing that the mother's failure to support G. M. M. was without justifiable cause. In addition, the trial court failed to make any written findings as to whether the mother's failure to support G. M. M. was without justifiable cause.

Consequently, for the same reasons outlined in the previous subdivision, the court erred in terminating the mother's rights and granting the adoption under OCGA § 19-8-10 (b) (2). See *McCollum v. Jones*, 274 Ga. App. at 821 (3) (a) (1) (physical precedent only) (the trial court erred in granting the adoption petition under OCGA § 19-8-10 (b) (2) when the mother testified that there were no opportunities for her to earn income while in jail, there was no evidence in the record that she had other means to pay child support

---

[3] See footnote 1, supra.

such as unemployment compensation or assets she could sell, and the petitioners did not introduce any evidence regarding the mother's financial condition during her incarceration; consequently, the petitioners failed to show that the mother failed to pay support without justifiable cause during the period of her incarceration); *Jones v. Sauls*, 213 Ga. App. 55, 57 (3) (b) (443 SE2d 693) (1994) (the trial court correctly denied the adoption petition based upon its finding that the father, who was incarcerated, had no ability to earn income so he could pay child support, and, therefore, his failure to support the child was not without justifiable cause); cf. *Ray v. Denton*, 278 Ga. App. 69, 71 (1) (628 SE2d 180) (2006) (the trial court correctly granted the adoption petition when the biological father failed to pay any child support after he was released from prison, even though he was employed, and, therefore, such failure was without justifiable cause).

3. *To the extent that the trial court's order could be read to imply that the adoption was authorized under a separate provision, OCGA § 19-8-10 (a) (4), we find that there is insufficient clear and convincing evidence to support such a conclusion.* Under OCGA § 19-8-10 (a) (4), an adoption is authorized if there is sufficient clear and convincing evidence that the child is deprived, that the deprivation is caused by the biological parent's failure to exercise proper parental care or control due to misconduct or inability, that such circumstances are likely to continue, that the child is likely to be harmed thereby, and that the adoption is in the best interest of the child. See OCGA § 15-11-94 (a), (b) (4) (A) (i)-(iv) (termination of parental rights statute).

In this case, pretermitting whether the court was authorized to grant the adoption petition based upon OCGA § 19-8-10 (a) (4),[4] the record shows that there is no dispute as to whether the mother was responsible for the actions that resulted in her losing custody of G. M. M. and that led to her imprisonment. The petitioner, however, has failed to present any clear and convincing evidence to support a finding that these circumstances are likely to continue now that the

---

[4] The record shows that the petitioner did not specifically cite to either OCGA §§ 19-8-10 (a) (4) or 15-11-94 (b) (4) in her adoption petition, nor did the petition include any allegations that the circumstances that led to the mother's deprivation of G. M. M. were likely to continue. In addition, the trial court did not cite to either of the provisions in its order. "OCGA § 19-8-10 (c) mandates that a parent be served with a copy of any adoption petition that makes allegations in accordance with subsection (a) or (b) of that Code section." *Smallwood v. Davis*, 292 Ga. App. at 176 (2). In *Smallwood*, this Court held that, "[b]y allowing [the petitioner] to make claims at the hearing that were not alleged in her petition and by basing its adoption decree on grounds that [the mother] was never properly notified of, the trial court failed to strictly construe OCGA § 19-8-10 in favor of [the mother], and such an erroneous decree must be reversed." Id. at 177 (2).

mother has been released from prison, completed substance abuse rehabilitation, and received significant occupational training. Thus, the court was not authorized to grant the adoption pursuant to OCGA §§ 19-8-10 (a) (4) and 15-11-94 (b) (4). See *McCollum v. Jones*, 274 Ga. App. at 823 (3) (a) (3) (physical precedent only) (the trial court was not authorized to terminate the mother's rights and grant an adoption pursuant to OCGA §§ 15-11-94 (b) (4) and 19-8-10 (a) (4) because there was no evidence that the cause of the child's deprivation — the mother's felony conviction and resulting incarceration — was likely to recur).

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 25, 2009.

*James J. Hopkins*, for appellant.
*Doris C. Orleck*, for appellee.