A11A0561. WEBER v. LIVINGSTON.
(710 SE2d 864)

MCFADDEN, Judge.

The Superior Court of Troup County entered an order terminating Kenneth Weber's parental rights to his daughter and granting an adoption in favor of the child's stepfather. Weber appeals, challenging the sufficiency of the evidence supporting the court's order. Because there is not clear and convincing evidence that Weber's failure to communicate with and care for his daughter was without justifiable cause, we reverse.

> On appeal from an order terminating parental rights based on an adoption petition, we construe the evidence favorably to the trial court's ruling and determine whether any rational trier of fact could have found by clear and convincing evidence that the biological parent's rights to custody have been lost. We do not weigh the evidence or assess witness credibility, but defer to the trial court's factual findings and affirm unless this standard is not met.

(Citations and punctuation omitted.) *Johnson v. Taylor*, 292 Ga. App. 354 (665 SE2d 49) (2008).

So construed, the evidence shows that Weber and Amy Livingston are the natural parents of S. C. W., who was born on September 12, 2001. The parents divorced in December 2004, and the mother was awarded primary custody of the child. Weber was granted visitation and ordered to pay child support of $65 per week. In July 2005, the mother married Matthew Livingston.

In October 2005, Weber was incarcerated on drug charges, and he was released six months later, in April 2006. Weber fell behind on his child support payments, which were brought current in June 2007 by a lump sum payment of $2,020 made by his mother.

Thereafter, the child support payments were made consistently until February 7, 2008. Weber did not make any more payments in that month or in March 2008. In April and May 2008, three payments totaling $697 were made. Weber made no other payments in 2008 or in the first four months of 2009.

Weber last visited with S. C. W. in the summer of 2007. He did not attempt to visit her again until December 2007. The mother refused his request for visitation at that time, explaining that he had not seen S. C. W. for five months, "[a]nd there comes a point that a mother steps in and says enough is enough; you're not going to continue to flip flop." She further testified that thereafter, she probably would not have allowed him to see the child and that there was nothing, short of a court order, that would have caused her to allow the child to go with him.

On March 30, 2009, Matthew Livingston filed his petition to adopt S. C. W., alleging that Weber had not paid child support or communicated with his child for over a year. On May 22, 2009, Weber's mother paid $3,896 to bring the unpaid child support current. After a hearing at which the only witnesses were Weber, his mother and Amy Livingston, the superior court entered its decree of adoption and terminated Weber's parental rights, finding that, for over a year, he failed to have meaningful contact with the child and failed to support her as required by law.

> Generally, a stepparent may adopt his or her spouse's child only if the biological parent whose rights will end with the adoption voluntarily and in writing surrenders all of his or her rights to the child to the stepparent for the purpose of enabling the stepparent to adopt the child. If the biological parent refuses to surrender his or her parental rights, OCGA § 19-8-10 [(b)] provides that the court may still grant the stepparent's petition to adopt the child if it finds, inter alia, that there is clear and convincing evidence . . . that the parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, *without justifiable cause*, has significantly failed: (1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or (2) To provide for the care and support of that child as required by law or judicial decree.

(Citations and punctuation omitted; emphasis in original.) *In re Marks,* 300 Ga. App. 239, 242 (684 SE2d 364) (2009).

In this case, since the petition to adopt was filed on March 30, 2009, "the relevant period of time is the year or more immediately

prior thereto. OCGA § 19-8-10 (b) (1)." *McCollum v. Jones*, 274 Ga. App. 815, 819 (3) (a) (1) (619 SE2d 313) (2005) (physical precedent only). It is undisputed that during that year, Weber had no contact with S. C. W., and in fact has not had any contact with her since the middle of 2007. It is further undisputed that during the year prior to the filing of the petition, Weber paid only $697 in child support, which constitutes approximately 20 percent of the amount that was due. Accordingly, there is sufficient evidence to support the trial court's findings that Weber significantly failed to communicate with and support S. C. W. for over a year.

However, those findings do not end the inquiry, because it must also be shown that such failures by Weber were without justifiable cause. See *Smallwood v. Davis*, 292 Ga. App. 173, 174-175 (1) (664 SE2d 254) (2008). The burden of proof as to that showing rested upon Matthew Livingston, who, as the petitioner, was required to prove by clear and convincing evidence that Weber's failures to communicate with and support the child were unjustified. See *In re Marks*, supra at 243-245 (2) (a), (b).

> It is the petitioners' burden to prove that termination of the [father's] parental rights is warranted, including the lack of justifiable cause. As explained by the Supreme Court of Georgia, the words "without justifiable cause" as used in [OCGA] § 19-8-10 (b) are constitutionally significant. The Due Process Clause gives a parent substantial protection of his or her parental rights requiring that clear and convincing evidence of unfitness be shown before a natural parent's rights in his child may be terminated.

(Citation and punctuation omitted.) *Smallwood*, supra at 175 (1).

With regard to lack of visitation, Weber testified that he called Amy Livingston in December 2007 and asked to see the child, but she refused to allow visitation and said that if he wanted to see S. C. W. again he had to hire an attorney and go to court. He claimed that he made numerous attempts thereafter to contact S. C. W., but Amy Livingston did not answer his calls, and the various phone numbers that he had for her, her parents and Matthew Livingston were all disconnected. He further testified that he sent gifts and cards to S. C. W., but they were returned to him. Weber also introduced testimony from his mother, who claimed that her many telephone calls to the Livingstons had gone unanswered, that their numbers had been disconnected, and that presents and cards sent by her and her son to S. C. W. were returned in damaged condition.

As noted above, Amy Livingston confirmed that in December 2007 she refused to let Weber visit his daughter and that, short of a

court order, there was nothing that would have caused her to allow subsequent visitations. She conceded that she had unilaterally made that decision because Weber had gone five months without seeing the child. Although she briefly claimed that neither Weber nor his parents subsequently contacted her about seeing S. C. W., she gave no testimony concerning the claims that the telephone numbers at which she could be reached had been disconnected and that gifts sent to the child had been damaged and returned. Matthew Livingston presented no other evidence contradicting those claims.

> We are troubled by the fact that on [these] critical issue[s], [Matthew Livingston], as the petitioner bearing the burden of proof by clear and convincing evidence, chose to rely solely on [one witness's minimal] testimony. Notably absent is any testimony from [the petitioner himself] and any telephone records for the time period in question.

*Smallwood*, supra at 175 (1). Under these circumstances, including Amy Livingston's unilateral decision to thwart Weber's contact with the child, "the petitioner has failed to demonstrate [by clear and convincing evidence] that the [father's] failure to communicate with the child for the requisite statutory period was without justifiable cause. [Cits.]" *In re Marks*, supra at 244 (2) (a).

With regard to Weber's significant failure to pay the required child support during the year preceding the filing of the petition, he testified that he was unable to work much because he twice injured his back, went to two different hospitals and thus earned between only $5,000 and $6,000. Weber's mother also testified that he is a roofer and that he did not make much money during the year in question because he got hurt and was not working. "Justifiable cause for the failure to pay child support may be found in situations where the parent has been unable to earn income due to . . . hospitalization, or other circumstances beyond his or her control. Each case must be decided on its own circumstances." (Citation and punctuation omitted.) *In re Marks*, supra at 245 (2) (b). Here, the petitioner failed to present any evidence contradicting Weber's evidence that he was unable to earn sufficient income because of his back injuries. "In fact, the petitioner failed to present any evidence of the [father's] financial condition during [the year prior to the filing of the petition]. Thus, the petitioner did not meet [his] burden of showing that the [father's] failure to support [S. C. W.] was without justifiable cause." Id. Compare *Ray v. Denton*, 278 Ga. App. 69, 71 (1) (628 SE2d 180) (2006) (claim that failure to pay support was result of medical illness was unavailing where the first illness allegedly occurred in the same month petition for adoption was filed).

*Judgment reversed. Phipps, P. J., and Andrews, J., concur.*

DECIDED MAY 25, 2011.

*Doris C. Orleck*, for appellant.
*Key, McCain & Gordy, R. Michael Key*, for appellee.