**FIRST DIVISION**
**BARNES, P. J.,**
**MARKLE and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 8, 2026**

# In the Court of Appeals of Georgia

A26A0075. BROOKS v. EICHFELD.

HODGES, Judge.

Damien Brooks filed this appeal from the trial court's denial of his petition for adoption, in which he sought to adopt his three minor stepchildren. The children's biological father is Tatum Eichfeld. Brooks argues on appeal that the trial court erred in denying his adoption petition (1) by finding that Eichfeld's failure to communicate with the children or make bona fide efforts to do so was justified, and by providing insufficient findings about whether Eichfeld's failure to pay child support was justified; and (2) by determining that adoption was not in the children's best interest. For the reasons that follow, we affirm.

> In matters of adoption the trial court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain

abuse. Thus, if there is any evidence to support the judgment entered in an adoption proceeding, it must be affirmed by this Court. Furthermore, in cases concerning termination of parental rights, we review the evidence in the light most favorable to the appellee and defer to the trial court in the area of factfinding.

*Price v. Grehofsky*, 349 Ga. App. 214, 215 (825 SE2d 594) (2019) (citation and punctuation omitted).

So viewed, the record shows that Eichfeld and the children's biological mother, Jannah Brooks, married in 2015. Jannah gave birth to twin girls that same year, and to a son in 2018. The biological parents' relationship was tumultuous. Jannah testified that after the twins were born, Eichfeld became abusive and controlling. Eichfeld admitted that he had thrown Jannah off the porch during their marriage, but testified that he did so because she kicked him in the testicles. Jannah testified that four or five restraining orders had been issued against Eichfeld. She also testified, and Eichfeld admitted, that he made false claims in order to get a restraining order against her, causing her to be arrested and jailed for about a month while she was still breastfeeding their youngest child. Eichfeld took care of the children while she was incarcerated, and also during three instances where Jannah had "taken off[,]" leaving the marital home

for, in one of the instances, "a month or so." Jannah's mother testified that she had no concerns about the children being alone with Eichfeld, and there is no evidence that Eichfeld abused the children. Jannah testified that when Eichfeld cared for the children, he did not provide them with medical care, and the youngest child got an ear infection which led to several surgeries. The child's nurse practitioner, however, testified that the fault could not definitively be attributed to Eichfeld.

After Eichfeld pled guilty to counts of making the false report that led to Jannah's arrest and to the aggravated stalking of Jannah in violation of a temporary protective order, he was sentenced to serve five years in confinement.

Jannah and Eichfeld divorced in 2021, while he was still incarcerated. She married Brooks the same year. Jannah and Eichfeld entered into a consent final order and incorporated parenting plan that, among other things, gave Eichfeld visitation and provided that he pay child support. The consent final order gave the parties joint legal custody of the children. Jannah received primary physical custody.

About a month before Eichfeld was due to be released, Jannah sought and was granted a temporary protective order against Eichfeld which prevented him from visiting the children after his June 2024 release. Jannah later successfully moved for

a modification of custody, and in September 2024, the trial court granted her sole physical and legal custody of the children and suspended Eichfeld's visitation because of the protective order.

Brooks petitioned to adopt all three children around the same time pursuant to OCGA §§ 19-8-6 and 19-8-10(b)(1), (2), alleging that Eichfeld had failed, for a period of one year or more, to communicate or make bona fide attempts to communicate with the children, and had failed to provide for their care and support. Following a hearing, the trial court denied the petition, finding that Brooks had failed to produce clear and convincing evidence that Eichfeld lacked justifiable cause for his failures to communicate with the children or to pay child support, and had failed to show by clear and convincing evidence that adoption would be in the children's best interest. Brooks appealed.

1. Brooks first argues that the trial court erred in finding that Eichfeld had justifiable cause for his failures to communicate with the children and to provide child support.[1] We find no error.

_____

[1] We note at the outset that both parties have failed to provide adequate citations to the record. While both parties include record citations, Brooks' brief presents some factual arguments without offering supporting record citations, and Eichfeld's brief presents some record citations that are inaccurate. Further, neither

As the petitioner, Brooks bears the burden of proving that the termination of parental rights is warranted, including the lack of justifiable cause, because of Eichfeld's failure to communicate with or support the children. *Ray v. Hann*, 323 Ga. App. 45, 49(2) (746 SE2d 600) (2013).

Pursuant to OCGA § 19-8-6(a)(1)

> A child whose legal father and legal mother are both living but are not still married to each other may be adopted by the spouse of either parent only when the other parent voluntarily and in writing surrenders all of his or her rights to the child to that spouse for the purpose of enabling that spouse to adopt the child and the other parent consents to the adoption[.]

---

party has complied with the record citation format provided in Court of Appeals Rule 25(d)(2) ("Reference to an electronic record should be indicated by the volume number of the electronic record and the PDF page number within that volume (Vol. Number – PDF Page Number; for example, V2-46)."). It is not this Court's responsibility to cull the record on behalf of any party, and if we have failed to locate evidence in the record, the responsibility lies with counsel. See *In the Interest of C. T.*, 286 Ga. App. 186, 187(1) (648 SE2d 708) (2007). See also *Rolleston v. Estate of Sims*, 253 Ga. App. 182, 185(2) (558 SE2d 411) (2001) (finding that "[a]ppellate judges should not be expected to take pilgrimages into the records").

When, as here, a biological father will not surrender his parental rights to allow a stepparent adoption, the trial court may terminate the biological father's rights and grant the stepparent's petition to adopt the children

> when the court determines by clear and convincing evidence that the parent, for a period of one year or longer immediately prior to the filing of the petition for adoption, *without justifiable cause*, has significantly failed:
>
> (1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or
>
> (2) To provide for the care and support of that child as required by law or judicial decree,
>
> and the court is of the opinion that the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home.

OCGA § 19-8-10(b) (emphasis supplied).

> As explained by the Supreme Court of Georgia, the words "without justifiable cause" as used in [OCGA] § 19-8-10(b) are constitutionally significant. The Due Process Clause gives a parent substantial protection of his or her parental rights requiring that clear and convincing evidence

6

of unfitness be shown before a natural parent's rights in his child may be terminated.

*Smallwood v. Davis*, 292 Ga. App. 173, 175(1) (664 SE2d 254) (2008) (citation and punctuation omitted). Accord *Thorne v. Padgett*, 259 Ga. 650, 651-52 (386 SE2d 155) (1989). "[T]his Court does not weigh the evidence or assess witness credibility, but we defer to the trial court's factual findings and affirm unless this standard is not met." *Price*, 349 Ga. App. at 218(1) (citation and punctuation omitted).

(a) *Justifiable cause for Eichfeld's failure to communicate*. Brooks argues that the trial court erred in finding Eichfeld communicated or made bona fide attempts to communicate with the children.

Brooks contends during the more than five years that Eichfeld was incarcerated and until the adoption hearing in 2025, Eichfeld had no meaningful communication with the children, only sending an inappropriate letter that they were too young to read. Although the trial court's order acknowledged that Eichfeld's attempted communications with his children included an inappropriate letter, it nonetheless found that he also attempted to communicate by "leaving toys and stuffed animals and

sending letters from prison, indicat[ing] a desp[e]rate attempt to maintain contact with his children[.]"

Jannah testified that Eichfeld sent multiple other letters, which she turned over to law enforcement or sent back without opening. She testified that he sent the letters in an attempt to maintain contact with the children. The record appears to contain no evidence of the content of these letters, other than the one Jannah testified was inappropriate. The record does show that prior to his incarceration, Eichfeld left four-wheelers for the twins, although Jannah testified he took them back, and Eichfeld testified that he left the children a stuffed animal, but that this item and a Mother's Day card were the basis of an aggravated stalking conviction because his actions were deemed a violation of a temporary protective order.

According to Eichfeld, prior to his incarceration, he had a daily relationship with the children, taking them to parks and on rides in a trailer he pulled behind his bicycle, and building them a playground in the backyard. He did not visit with the children while he was incarcerated, although he testified that he wanted them to visit. He sent their birth certificates to the appropriate authorities so that they were added to his visitation list. They could have visited him at a nursery set up for that purpose

at the prison. Eichfeld's sister testified that although the children were on the visitation list, she was "not allowed" to take them to the prison for visits because Jannah had reported that Eichfeld was trying to contact her through the sister. Eichfeld himself was unable to visit the children after he was released from prison because of the protective order Jannah put in place a month prior to his release.

As outlined above, some of the evidence regarding Eichfeld's attempts to communicate with or spend time with the children is conflicting. However, we are mindful that "[i]t was for the trial court, and not for the appellate court, to assess the credibility of the witnesses and resolve contested factual issues." *Price*, 349 Ga. App. at 220(1)(b) (citation and punctuation omitted) (upholding trial court's decision to deny petition for stepparent adoption where trial court found that biological mother's "testimony alone was sufficient" to determine whether she attempted to communicate with child, even where the stepparent pointed to a lack of tangible evidence).

We recognize that "incarceration does not establish justification per se; each case must be decided on its own circumstances." *Johnson v. Taylor*, 292 Ga. App. 354, 357(1) (665 SE2d 49) (2008) (citation and punctuation omitted). Although Brooks

points to *Johnson*, arguing that in that case the Court determined that the biological father failed to show justifiable cause for his lack of communication because he could have sent his child cards or telephoned while he was in prison and failed to do so, *Johnson* is distinguishable because the mother asserted that she accepted the father's calls from prison and tried to keep him involved in the child's life. Id. Here, there was evidence that Jannah returned Eichfeld's letters or gave them to police, and that her actions blocked Eichfeld's sister's ability to take the children to the prison for visits.

Under our standard of review, there was evidence to support the trial court's findings of justifiable cause for Eichfeld's lack of communication with the children. Because "[t]he trial court is vested with significant discretion in making the determination as to whether the parent's failure to communicate with the child[ren] is excusable[, w]e will not disturb the exercise of that discretion here." *Price*, 349 Ga. App. at 221(1)(b) (citation and punctuation omitted).

(b) *Justifiable cause for Eichfeld's failure to pay child support.* Brooks contends that the trial court erred by "making no appropriate findings" regarding whether Eichfeld's failure to pay child support was justifiable.

As an initial matter, our Court has recognized that a trial court is not required to articulate specific findings of fact and conclusions of law in an adoption proceeding order where, as here, the court does not enter a decree of adoption or terminate the legal father's parental rights. *Thaggard v. Willard*, 285 Ga. App. 384, 389-90(3) (646 SE2d 479) (2007).

In assessing whether justifiable cause for failure to pay child support exists, this Court has examined "situations where the parent has been unable to earn income due to incarceration, mental illness, mental incapacity, hospitalization, or other circumstances beyond their control." *Price*, 349 Ga. App. at 219(1)(a) (citations and punctuation omitted). "[I]ncarceration is merely one relevant factor to be considered by the trial court and does not per se give rise to justifiable cause[.]" *Bateman v. Futch*, 232 Ga. App. 271, 272(1) (501 SE2d 615) (1998) (citation and punctuation omitted). Whether a parent lacks justifiable cause for failing to support a child is a "threshold matter of discretion with the trial court who has the opportunity to observe the parties and hear the evidence." *Price*, 349 Ga. App. at 219(1)(a) (citation and punctuation omitted).

Here, contrary to Brooks' contentions, the trial court sufficiently outlined the facts and the rationale underlying the exercise of its discretion in finding justifiable cause for Eichfeld's failure to pay child support. There is evidence that several months after Eichfeld's release, he became employed and began sending child support payments to Jannah. Eichfeld testified that several of the payments were cashed, but later payments were refused. Jannah testified that she never cashed any of the payments. There was also evidence supporting the trial court's finding that Jannah attempted to use Eichfeld's payments to argue that he was violating a restraining order and engaging in aggravated stalking.

As noted above, any issues of witness credibility are for the trial court, not this Court. *Price*, 349 Ga. App. at 220(1)(b). "Given this evidence, and given the trial court's very broad discretion in this area, the trial court was authorized to find [Eichfeld] had justifiable cause for [his] failure to support the child[ren]." Id. at 219(1)(a).

2. Finally, Brooks asserts that the trial court erred in determining that adoption was not in the children's best interest. We find no error.

Under OCGA § 19-8-10(b), the trial court assesses whether "the adoption is in the best interests of that child, after considering the physical, mental, emotional, and moral condition and needs of the child who is the subject of the proceeding, including the need for a secure and stable home." Our Supreme Court has determined that, "[i]n considering what is in the best interest of the child, the trial court may consider the child's historical relationship with the parent, the child's relationship with the third-party custodian, and the child's special medical, emotional, or educational needs." *Newlin v. Adamar*, 363 Ga. App. 456, 459 (871 SE2d 458) (2022) (citation and punctuation omitted).

"With regard to the best interest test in adoption cases, the trial court has very broad discretion with which this Court will not interfere except in cases of plain abuse." *In re Marks*, 300 Ga. App. 239, 242 (684 SE2d 364) (2009). We have held that a court may not

> terminate a parent's natural right because it has determined that the child might have better financial, educational or even *moral advantages* elsewhere. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship. The requirements of Georgia's adoption statutes are mandatory and must be strictly construed in favor of the natural parents,

13

because the application thereof results in the complete and permanent severance of the parental relationship.

Id. at 243 (citations and punctuation omitted). "[E]ven slight evidence will support a judgment denying the petition." *Owens v. Griggs*, 151 Ga. App. 730, 731(2) (261 SE2d 463) (1979).

Here, the trial court's order explicitly states that it considered the best interests of the children, as well as the love, affection, bonding, and emotional ties between them, Brooks, and Eichfeld. The trial court also considered Brooks' and Eichfeld's capacity to give the children love and guidance. The trial court noted Brooks' statement that his relationship with the children would not change even if the adoption did not occur, and it determined that both Brooks and Eichfeld loved the children and that the children had a strong bond with Eichfeld prior to his incarceration.

The evidence showed that prior to his incarceration, Eichfeld had a strong bond with the children, playing with them and caring for them by keeping them clean and fed, including during the times when Jannah had left the home. The trial court also determined that there was no evidence that Eichfeld abused the children, noting that

although Jannah complained that the youngest child got an untreated ear infection while in Eichfeld's care, the nurse practitioner who examined the child testified that fault could not be attributed to Eichfeld. There is evidence in the record to support this finding. The nurse practitioner, who is the children's primary care provider, testified that the youngest child has had ongoing ear infections since he was about two months old, and he has had several ruptures, necessitating the placement of tubes in his ears. She testified that although some of the ruptures had not been well cared for, the child's ear problems could not be attributed to the fault of Jannah, Brooks, or Eichfeld.

The trial court also cited to the evaluation of a licensed professional counselor. The trial court determined that the counselor's bonding assessment of the children showed they were very comfortable with Brooks, but also determined that the children could have a positive re-introduction to Eichfeld if a therapist assisted in the transition. There is evidence supporting these findings. Although the counselor testified that harm could occur if the children were re-introduced to Eichfeld without therapy to aid the transition, he also recommended that, if the trial court declined to

grant the adoption, Eichfeld have some level of visitation accompanied by counseling, because doing so could assist in a smooth re-introduction.

In support of its findings regarding the bonding and affection between Eichfeld and the children, the trial court cited to evidence presented at the hearing that Eichfeld had been actively engaged in the children's lives prior to his incarceration by building them a playground and spending time with them, as outlined above. Eichfeld testified that he missed his children very much, had expected to visit with them after being released, and worried that he would not see them again. He also testified that he was willing to comply with court-ordered counseling. As the trial court noted, Eichfeld is not seeking custody and is only seeking visitation as contemplated by the consent final order in his and Jannah's divorce.

Because some evidence supports the trial court's determination, "we conclude that there is a lack of clear and convincing evidence" that granting the adoption is in the children's best interest and that Eichfeld's parental rights should be terminated. *Price*, 349 Ga. App. at 223(3). "Simply stated, under the facts here a finding either way was not demanded. The matter is properly within the discretion of the trial judge, as

the fact finder." *Hix v. Patton*, 147 Ga. App. 14, 15 (248 SE2d 28) (1978).

*Judgment affirmed. Barnes, P. J., and Markle, J., concur.*