**THIRD DIVISION**
**MILLER, P. J.,**
**RAY and BRANCH, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**March 20, 2013**

# In the Court of Appeals of Georgia

A12A2571. DEAL, et al. v. MILLER, et al.

RAY, Judge.

Governor Nathan Deal and other government officials[1] (the "State") appeal the trial court's order certifying a class of indigent parents led by five named plaintiffs who allege that they were "denied" government-funded counsel while facing incarceration in civil child support contempt proceedings at which the State had legal representation. The State contends that the trial court erred in certifying the class because the claims in the named plaintiffs' complaint are moot and therefore

---

[1] The other officials are Clyde Reese, III, commissioner of the Georgia Department of Human Services; Keith Horton, director of the Division of Child Support Services; Tammy Broome, manager of the Rome Child Support Office; Betty Smith, manager of the Alapaha Child Support Office; Patricia Gunn, manager of the Middle Swainsboro Child Support Office; and Cynthia Head, manager of the Alcovy Monroe Child Support Office, all in their official capacities.

nonjusticiable, and because the named plaintiffs failed to meet the class-action certification requirements of OCGA § 9-11-23 (a) and (b) (2). For the reasons set forth below, we reverse.

On review of an order granting class certification, "we will consider the factual findings as adopted by the trial court and affirm them unless clearly erroneous, and we will review the conclusions of law for an abuse of discretion."[2]

To obtain class certification, the plaintiffs are required to satisfy all four pre-requisites set forth in OCGA § 9-11-23 (a), and at least one factor in OCGA § 9-11-23 (b).[3] Accordingly, to certify a class action, the trial court must find that the members of the class are so numerous that bringing them all before the court is impracticable; that questions of fact or law common to all class members exist; that the claims or defenses of the representative parties are typical of those of the class; and that the representative parties will fairly and adequately protect class interests.[4] In the instant case, the trial court found that the proposed class met the OCGA § 9-11-

---

[2] (Punctuation and footnote omitted.) *American Debt Foundation, Inc. v. Hodzic*, 312 Ga. App. 806, 808 (720 SE2d 283) (2011).

[3] Id.; *Diallo v. American InterContinental Univ., Inc.*, 301 Ga. App. 299, 300 (687 SE2d 278) (2009).

[4] OCGA § 9-11-23 (a) (1) - (4).

2

23 (a) requirements and also satisfied OCGA § 9-11-23 (b) (2), which provides that a court may authorize certification where "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

The record before us shows that the named plaintiffs are fathers who were held in civil contempt for wilfully violating child support orders. The named plaintiffs were incarcerated after proceedings at which they were not represented by counsel, but at which the opposing State agency had legal representation. The named plaintiffs filed a complaint alleging that they were deprived of due process of law because, despite their indigence and risk of incarceration, they were denied government-funded counsel at their contempt hearings. The complaint sought class certification, as well as declaratory and injunctive relief. The named plaintiffs did not appeal the contempt findings against them, nor did they request counsel at or prior to the contempt hearings that led to their incarceration. Further, they did not challenge their lack of appointed counsel below. However, approximately eight months after filing their complaint and moving for class certification, four of the five named plaintiffs, on November 8, 2011, sent letters to the courts that held them in contempt requesting

appointed counsel at any future contempt proceedings. The record properly before us does not show that the named plaintiffs received any response from the trial courts. On December 30, 2011, just more than a month after those letters were sent, the trial court in the instant case certified a class of

> all indigent parents who, without appointed counsel and without constitutionally mandated procedural protections to ensure fundamentally fair proceedings, face incarceration for nonpayment or underpayment of child support in child support contempt proceedings where the Georgia Department of Human Services (DHS) is represented by [S]tate-funded counsel.

1. The State contends that the trial court abused its discretion in certifying the class. The State argues that the plaintiffs failed to demonstrate that they met the numerosity, commonality, typicality, and adequacy requirements of OCGA § 9-11-23 (a) (1) - (4),[5] as well as the appropriateness of declaratory or injunctive relief requirement of OCGA § 9-11-23 (b) (2). We find that the trial court erred in

---

[5] Although enumerated as error, the State presents no argument regarding the typicality requirement of OCGA § 9-11-23 (a) (3). Nonetheless, we will consider this portion of the enumeration, as we are not required to deem it abandoned. See Court of Appeals Rule 25 (c) (2).

determining that the named plaintiffs met the commonality and typicality requirements of OCGA § 9-11-23 (a). Therefore, we reverse.

In determining whether a class action should proceed, the first issue a trial court must resolve is not whether the plaintiffs have stated a cause of action or ultimately may prevail on the merits, but whether the statutory requirements for class certification have been met.[6]

> A party seeking class certification must affirmatively demonstrate his compliance with [Federal Rule of Civil Procedure 23 (a)] – that is, he must be prepared to prove that there are *in fact* sufficiently numerous parties, common questions of law or fact, etc. We [have] recognized . . . that sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question, and that certification is proper only if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23 (a) have been satisfied . . . . Frequently that rigorous analysis will entail some overlap with the merits of the plaintiff's underlying claim.[7]

---

[6] *Rite Aid of Ga., Inc. v. Peacock*, 315 Ga. App. 573, 574 (1) (726 SE2d 577) (2012), cert. denied, 2012 Ga. LEXIS 908; OCGA § 9-11-23 (a).

[7] (Citations and punctuation omitted; emphasis in original.) *Wal-Mart Stores, Inc. v. Dukes*, __ U. S. __ (II) (A) (131 SC 2541, 2551, 180 LE2d 374) (2011).

Because there is a dearth of Georgia cases on the issue of class certification, when necessary, we will look for guidance to federal cases interpreting Rule 23 of the Federal Rules of Civil Procedure, upon which OCGA § 9-11-23 was based.[8]

*(a) Commonality and typicality.* The commonality and typicality provisions of OCGA § 9-11-23 (a) are

> distinct, but interrelated. Traditionally, commonality refers to the group characteristics of the class as a whole, while typicality refers to the individual characteristics of the named plaintiffs in relation to the class. Both prerequisites, however, share the common purpose of requiring that a sufficient nexus exists between the legal claims of the named class representatives and those of individual class members to warrant class certification.[9]

*(i) Commonality.* "Common issues of fact and law predominate if they have a direct impact on every class member's effort to establish liability and on every class member's entitlement to injunctive . . . relief."[10]

---

[8] *American Debt Foundation, Inc.*, supra.

[9] (Citations and punctuation omitted.) *In re Scientific-Atlanta, Inc. Securities Litigation*, 571 F.Supp.2d 1315, 1325 (I) (B) (2007).

[10] (Citation and footnote omitted.) *Rollins, Inc. v. Warren*, 288 Ga. App. 184, 187 (1) (653 SE2d 794) (2007).

6

Here, the trial court in certifying the class identified the common question as "whether Plaintiffs are entitled to counsel in civil contempt proceedings where the State is represented by counsel." However, as the United States Supreme Court has stated, "any competently crafted class complaint literally raises common questions."[11] Thus, plaintiffs seeking to represent a class "must do more than draft a complaint; instead, [they] must show that the class members 'have *suffered the same injury,' which does not mean merely that they have all suffered a violation of the same provision of law*."[12]

In the present case, the named plaintiffs allege that they were injured because they were "unconstitutionally *denied* counsel."[13] However, as stated above, it is undisputed that the plaintiffs did not request counsel at or prior to the civil contempt hearings that led to their incarceration. Nor did they appeal the trial courts' findings of contempt, which means they never challenged their lack of appointed counsel below. Because the trial courts were not presented with requests to appoint counsel

---

[11] (Citation and punctuation omitted.) *Dukes*, supra.

[12] (Citation and punctuation omitted; emphasis in original.) *Rite Aid*, supra at 575 (1) (a), citing *Dukes*, supra.

[13] (Emphasis supplied.)

7

prior to the contempt hearings, and have never ruled on the later requests, plaintiffs have not been denied counsel in that context.

Pretermitting whether the United States Supreme Court's recent decision in *Turner v. Rogers*[14] is dispositive of the underlying issue of entitlement to counsel in the precise circumstances of the instant case, *Turner* makes clear as a threshold matter that, contrary to the plaintiffs' assertions, "the Sixth Amendment [right to counsel] does not govern civil cases."[15] Plaintiffs in the instant case alleged that the State's "policy of incarcerating indigent parents and denying them the right to counsel" deprived them of due process under the fundamental fairness doctrine of the Fourteenth Amendment. *Turner* further determined that "the Due Process Clause does not always require the provision of counsel in civil proceedings where incarceration is threatened."[16]

Thus, the next question in the instant case is whether the trial courts had a duty to inquire into the plaintiffs' right to counsel, such that a failure to inquire amounted to a denial of counsel and, thus, to injury. The Supreme Court of Georgia already has

---

[14] __ U. S. __ (131 SC 2507, 180 LE2d 452) (2011).

[15] *Turner*, supra at 2516 (III) (A).

[16] (Citation omitted.) Id. at 2518 (III) (B).

answered that question, holding that in civil contempt proceedings regarding a failure to pay child support, the trial court did not err in "*failing to inquire* whether appellant was entitled to counsel."[17]

The recognition that the named plaintiffs *may* have had the right to counsel if they had requested and been denied counsel, and that in that instance they *may* have suffered a common injury, does not lead to the conclusion that the named plaintiffs in the present action have shown a common injury sufficient to satisfy the commonality requirement of OCGA § 9-11-23 (a). Here, whether the named plaintiffs *actually were denied counsel* is the essential question, because the answer determines whether they have shown the injury on which their theory of commonality depends. While it is true that to satisfy Federal Rule 23, and thus OCGA § 9-11-23, "even a single common question will do,"[18] here the named plaintiffs have shown no common question in that they have provided no proof that either they or other class members were deemed qualified for or were denied access to appointed counsel. Given

---

[17] (Emphasis supplied.) *Adkins v. Adkins*, 242 Ga. 248, 248 (2) (248 SE2d 646) (1978), citing and distinguishing *Argersinger v. Hamlin*, 407 U. S. 25, 37 (92 SC 2006, 32 LE2d 530) (1972) (holding that an indigent defendant must be appointed counsel in a *criminal proceeding* leading to incarceration, regardless of whether that proceeding is a felony or a misdemeanor).

[18] (Citation and punctuation omitted.) *Dukes*, supra at 2556 (II) (C).

9

*Turner*'s confirmation that there is no per se right to appointed counsel in civil cases where incarceration is threatened, and *Adkins*' determination that trial courts have no duty to inquire into the right to appointed counsel in civil proceedings, even "[a] common question is not enough when the answer may vary with each class member and is determinative of whether the member is properly part of the class."[19] Here, determining whether the other putative class members were financially eligible for appointed counsel, requested such counsel, and had their requests denied, would require a highly individualized inquiry.

The United States Supreme Court has repeatedly held that "a class representative must be part of the class and possess the same interest and *suffer the same injury* as the class members."[20] In an action involving a class consisting of a trucking company's African-American and Mexican-American drivers who alleged that they were denied transfers to more desirable jobs, the United States Supreme Court reversed certification where it was clear that the drivers were not qualified for

---

[19] (Citation and punctuation omitted; emphasis omitted.) *Rite Aid*, supra at 575 (1) (a).

[20] (Citations and punctuation omitted; emphasis supplied.) *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U. S. 395, 403 (II) (2, 3) (97 SC 1891, 52 LE2d 453) (1977).

the positions they sought, and thus "could have suffered no injury as a result of the allegedly discriminatory practices, and they were, therefore, simply not eligible to represent a class of persons who did allegedly suffer injury."[21] Here, the named plaintiffs have failed to show that they suffered any injury, because they did not request counsel, the trial courts had no duty to inquire into their right to appointed counsel, and they were not denied counsel. Thus, the named plaintiffs cannot show the commonality required to represent a class that may contain other members who actually requested, but were denied counsel.

Further, as we noted in *Rite Aid v. Peacock*, "Georgia appellate courts have refused to condone the certification of a class when the circumstances surrounding a member's actual response to the defendant's allegedly wrongful act could vary widely."[22] We found in *Rite Aid* that the named plaintiff's contradictory response to the sale of his prescription information – he protested the wrongfulness of the sale, yet continued to fill his prescriptions at the pharmacy that bought his medical information – "highlights his failure to prove that any or most other class members

---

[21] Id. at 403-404 (II) (2, 3).

[22] (Citation omitted.) Supra at 577 (1) (a) (ii).

11

share not only his apparent outrage . . . but also his tacit acceptance of that event."[23]

Here, the named plaintiffs' failure to request counsel, to appeal their contempt findings, or to raise the issue of appointed counsel below, exhibited a tacit acceptance of the lack of appointed counsel that they now protest. This tacit acceptance may not be similar to the claims of other, unnamed class members who may actually have requested and been denied counsel, or who may have appealed their contempt findings because counsel was not appointed for them.[24] "A party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing."[25] Further, to presume that the plaintiffs in the instant case were injured – in the absence of any request for and denial of counsel – would be mere speculation. We have

---

[23] (Citation omitted.) Id.

[24] One named plaintiff even deposed that, *after* the filing of the lawsuit from which this appeal springs, he appeared at a contempt hearing and again did not request appointed counsel.

[25] (Footnote omitted.) *Carnett's Inc. v. Hammond*, 279 Ga. 125, 130 (6) (610 SE2d 529) (2005) (court declined to remand a class certification action for further discovery where the plaintiff never sought discovery on the issue of whether a business relationship existed between all parties, and instead relied upon her conclusory argument that the business relationship exemption did not exist).

reversed class certification in a case where, as here, regardless of what other plaintiffs may have suffered, the named plaintiff showed only speculation as to harm.[26]

*(ii) Typicality.* "To be typical, a class representative must possess the same interest and suffer the same injury as the class members."[27] Here, the named plaintiffs have not shown typicality in that they have not shown injury.

We have held that where a named plaintiff shows no injury or has no valid claim, class certification is improper. Here, the named plaintiffs failed to request counsel or to assert their alleged right to counsel prior to or in challenges to their contempt hearings below. In an analogous case, where a named plaintiff failed to notify the defendant-company of any alleged defects covered by a warranty within the time specified as a condition precedent to recovery, the trial court properly denied class certification.[28]

---

[26] *Rite Aid*, supra at 576 (1) (a) (i).

[27] (Citation and punctuation omitted.) *In re Scientific-Atlanta, Inc. Securities Litigation*, supra at 1325 (I) (B) (2).

[28] *Dryvit Systems, Inc. v. Stein*, 256 Ga. App. 327, 329 (1) and (3) (568 SE2d 569) (2002). See also *Life Ins. Co. of Ga. v. Meeks*, 274 Ga. App. 212, 218 (3) (d) (617 SE2d 179) (2005) (when the named plaintiff has no valid claim against the defendant, he is not eligible to represent the class because he cannot meet adequacy requirement).

13

*(b) Declaratory and injunctive relief.* In addition to meeting all four requirements of OCGA § 9-11-23 (a), the named plaintiffs must meet at least one of the requirements set forth in OCGA § 9-11-23 (b). Here, the trial court ruled that certification was proper under OCGA § 9-11-23 (b) (2), which provides that certification is authorized only when the "party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

However, the only alleged failure to act identified by the named plaintiffs was the "policy" of "denying" counsel to indigent child support obligors prior to their incarceration. The record contains no evidence of a policy of denial of *requests* for counsel. Nor does the record contain evidence that any of the plaintiffs asked the trial courts for counsel prior to their contempt hearings. Further, although four of the named plaintiffs sent letters requesting counsel for *future proceedings* to the courts that had previously held them in contempt, nothing in the record indicates that these requests ever have been denied. Nor does the record indicate whether other putative class members have requested and been denied counsel. Thus, given our determinations in Division (1) (a) (i) and (ii) that the class fails to meet the

14

commonality and typicality requirements of OCGA § 9-11-23 (a) (2) and (3), we find that the trial court erred in finding that injunctive and declaratory relief was appropriate in this case.

To find otherwise – absent the actual request for and denial of counsel – would be to decide the ultimate issue in the case, which is whether indigent child support obligors are entitled to counsel in civil contempt proceedings where the State is a party and has representation. The ultimate issue, however, is not before us. The relief sought, albeit via the vehicle of class certification, would establish through its declaratory and injunctive posture a prophylactic "right" to appointed counsel.[29] We decline to extend this relief. Accordingly, for the foregoing reasons, we reverse the trial court's certification of the class.

2. Given our holding in Division 1, we need not reach the State's remaining contentions.

*Judgment reversed. Branch, J. concurs and Miller, P. J. concurs in Judgment only*.

---

[29] See *Davis v. Page*, 714 F.2d 512, 518 (IV) (1983).