295 Ga. 504
FINAL COPY

S13G1197. MILLER et al. v. DEAL et al.

BLACKWELL, Justice.

In this lawsuit against the Department of Human Services,[1] the trial court certified a class of plaintiffs. The Department appealed, and in <u>Deal v. Miller</u>, 321 Ga. App. 220 (739 SE2d 487) (2013), the Court of Appeals reversed, concluding that the named plaintiffs failed in several respects to show that class certification was warranted. We issued a writ of certiorari to review that decision, and we now affirm the judgment of the Court of Appeals.

1. The named plaintiffs in this lawsuit are indigent parents, all of whom say that they have been incarcerated for failures to pay child support following civil contempt proceedings initiated by the Department and in which the Department was represented by lawyers. The plaintiffs could not afford to hire their own lawyers for these proceedings. Without a lawyer to defend them, the plaintiffs contend, the proceedings in which they were incarcerated failed to

---

[1] The lawsuit names Governor Nathan Deal and several Department officials as defendants, not the Department itself. But because the Governor and the other officials were sued only in their official capacities, the lawsuit amounts to a suit against the Department. For that reason, we refer in this opinion to the several defendants simply as the "Department."

comport with the constitutional guarantee of due process. Alleging that the Department routinely initiates such proceedings against indigent parents, but fails to provide lawyers for such parents at the expense of the Department, the plaintiffs sued, seeking declaratory and injunctive relief not only for themselves, but also for a class of all unrepresented and indigent parents who are threatened with incarceration in such proceedings. On the motion of the plaintiffs to certify this class, the trial court found that the plaintiffs had shown each of the four essential prerequisites for class certification under OCGA § 9-11-23 (a), as well as the prerequisite for certification under OCGA § 9-11-23 (b) (2). Based on these findings, the trial court determined that a class action was warranted, and it certified the class.

The Court of Appeals reversed. To begin, the Court of Appeals correctly explained that the plaintiffs — if they were to be permitted to seek relief for the class that the trial court certified — had to prove that the class was sufficiently numerous,[2] that the claims that they asserted on behalf of the class presented

_____

[2] See OCGA § 9-11-23 (a) (1) (plaintiffs must show that "class is so numerous that joinder of all members is impracticable").

2

common questions,[3] that their own claims are typical of those that they asserted on behalf of the class,[4] that they are adequate representatives of the class,[5] and that the declaratory and injunctive relief that they sought might be appropriately awarded to the class as a whole.[6] See Deal, 321 Ga. App. at 221. In the end, the Court of Appeals concluded that the plaintiffs had failed to prove commonality and typicality, see id. at 222-226 (1) (a), and that they had failed as well to prove the propriety of relief for the class as a whole. See id. at 226-227 (1) (b). Though these conclusions may be right — we will get to that shortly — the reasoning by which the Court of Appeals reached them is not.

---

[3] See OCGA § 9-11-23 (a) (2) (plaintiffs must show that "[t]here are questions of law or fact common to the class").

[4] See OCGA § 9-11-23 (a) (3) (plaintiffs must show that "[t]he claims . . . of the representative parties are typical of the claims . . . of the class").

[5] See OCGA § 9-11-23 (a) (4) (plaintiff must show that "[t]he representative parties will fairly and adequately protect the interests of the class").

[6] See OCGA § 9-11-23 (b) (2) (plaintiff must show that "[t]he party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole"). Although a plaintiff always must prove each of the four circumstances identified in OCGA § 9-11-23 (a) (1)-(4), a plaintiff need only prove one of the three circumstances identified in OCGA § 9-11-23 (b) (1)-(3). In this case, the trial court certified the class under OCGA § 9-11-23 (b) (2), and so, we do not consider OCGA § 9-11-23 (b) (1) or (b) (3).

As we understand its opinion, the Court of Appeals premised all of its conclusions on a fundamental misunderstanding of the constitutional right to counsel. The Court of Appeals seems to have assumed that the named plaintiffs — and presumably, the other members of the class too — all have a constitutional right to appointed counsel in civil contempt proceedings of the sort about which the plaintiffs complain. Deal, 321 Ga. App. at 224 (1) (a) (i) (acknowledging that "the named plaintiffs may have had the right to counsel" (emphasis omitted)). Even so, the Court of Appeals reasoned, if an indigent parent fails to assert his right to counsel in his own contempt proceeding — by timely requesting a lawyer, by securing a ruling on that request from the contempt court, and by appealing any finding of contempt entered without the benefit of counsel — the parent cannot be said to have been unconstitutionally denied counsel.[7] See id. at 223-224 (1) (a) (i). Whether an indigent parent is

---

[7] The Court of Appeals put it this way:

In the present case, the named plaintiffs allege that they were injured because they were "unconstitutionally *denied* counsel." However, . . . it is undisputed that the plaintiffs did not request counsel at or prior to the civil contempt hearings that led to their incarceration. Nor did they appeal the trial courts' findings of contempt, which means they never challenged their lack of appointed counsel below. Because the trial courts were not presented with requests to appoint counsel prior to the contempt hearings, and have never ruled on the later requests, plaintiffs have not been denied counsel in that

4

advised of his right to request counsel is of no consequence, the Court of Appeals added, because no court has an obligation in civil contempt proceedings to inquire about counsel. See id. at 224 (1) (a) (i). Accordingly, the Court of Appeals explained, whether any class member had been denied a right to counsel would require an individualized inquiry about the extent to which they insisted upon counsel, and as a result, the plaintiffs could not show commonality among the class. See id. ("Here, whether the named plaintiffs *actually were denied counsel* is the essential question, because the answer determines whether they have shown the injury on which their theory of commonality depends." (Emphasis in original.)). Because the named plaintiffs themselves had not insisted upon counsel in their own contempt proceedings, the Court of Appeals said, they could not show that their claims were typical of those asserted on behalf of the class. See id. at 226 (1) (a) (ii) ("Here, the named plaintiffs have not shown typicality in that they have not shown injury."). And likewise, the Court of Appeals concluded, the plaintiffs could not show the propriety of relief for the class as a whole, insofar as the record did not reflect "whether other

context.
Deal, 321 Ga. App. at 223-224 (1) (a) (i) (emphasis in original).

5

putative class members have requested and been denied counsel." Id. at 227 (1) (b).

Generally speaking, to the extent that the Constitution affords a right to counsel at government expense, it affords a right that is not waived merely by a party unknowingly failing to insist upon a lawyer in a proceeding in which he is not even advised that he might request counsel. That certainly is true of the categorical right to counsel that is guaranteed to the accused in criminal prosecutions by the Sixth Amendment. See, e.g., Brewer v. Williams, 430 U. S. 387, 404 (III) (97 SCt 1232, 51 LE2d 424) (1977) ("[T]he right to counsel does not depend upon a request by the defendant . . . ." (Citations omitted.)); Carnley v. Cochran, 369 U. S. 506, 513 (82 SCt 884, 8 LE2d 70) (1962) ("[I]t is settled that where the assistance of counsel is a constitutional requisite, the right to be furnished counsel does not depend on a request." (Footnote omitted.)). It appears to be no less true of the more limited and conditional right to counsel that the courts have recognized in certain other proceedings as an incident of due process. See, e.g., Gagnon v. Scarpelli, 411 U. S. 778, 790 (III) (93 SCt 1756, 36 LE2d 656) (1973) (in probation or parole revocation proceedings, presupposing that the probationer or parolee will be "informed of his right to

request counsel"); Vaughn v. Rutledge, 265 Ga. 773, 774 (2) (462 SE2d 132) (1995) ("A probationer is entitled . . . to be informed of his right to request counsel." (Citation, punctuation and emphasis omitted.)). The Court of Appeals seems to have misconstrued our decision in Adkins v. Adkins, 242 Ga. 248, 248 (2) (248 SE2d 646) (1978), as suggesting that a trial court never is required to advise or to inquire about an entitlement to counsel in a civil contempt case. But in Adkins, we dealt with an assertion that the *Sixth Amendment* — which, of course, applies only in criminal proceedings and has no application whatsoever in a civil case — required a civil contempt court to inquire about counsel. We did not address in Adkins any right to counsel that arose from the guarantee of due process, as the plaintiffs in this case claim. Accordingly, to the extent that named plaintiffs or other class members have a constitutional right to appointed counsel, they do not waive that right simply by failing to insist upon counsel in proceedings in which no one advised them that they could ask for counsel.

2. We nevertheless conclude that the Court of Appeals was right when it determined that the plaintiffs failed to show the requisite commonality, typicality, and propriety of classwide relief. To show these things, the plaintiffs relied entirely on their assertion of a *categorical* constitutional right to

appointed counsel. But in Turner v. Rogers, ___ U. S. ___, ___ (III) (B) (131 SCt 2507, 180 LE2d 452) (2011), the United States Supreme Court made perfectly clear that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration." (Emphasis in original.) To be sure, Turner involved an assertion that indigent parents have a categorical right to appointed counsel in *all* civil contempt proceedings in which they are threatened with incarceration for a failure to pay child support. The plaintiffs in this case, on the other hand, assert only that indigent parents have a right to appointed counsel in civil contempt proceedings in which they are threatened with incarceration for a failure to pay child support *and* in which the Department is represented by a lawyer, a circumstance that the Supreme Court explicitly declined to address in Turner. See id. at ___ (III) (B) ("We do not address civil contempt proceedings where the underlying child support payment is owed to the State . . . . [In such proceedings,] [t]he government is likely to have counsel or some other competent representative." (Citations omitted.)). Still, the plaintiffs urge a categorical right, even if it is one more narrow than the categorical right rejected in Turner.

8

Although the plaintiffs cite a number of court decisions around the country to support their claim of a categorical constitutional right,[8] most of these decisions were based on Lassiter v. Dept. of Social Svcs. of Durham County, 452 U. S. 18 (101 SCt 2153, 68 LE2d 640) (1981), and all were decided before Lassiter was clarified by Turner. In Lassiter, the Supreme Court recognized a "presumption that an indigent litigant has a right to appointed counsel only when, if he loses, he may be deprived of his physical liberty." 452 U. S. at 26-27 (II) (A). As the Supreme Court later explained in Turner, however, Lassiter does not suggest categorical rights to appointed counsel in civil proceedings, even those that may lead to incarceration:

> [T]he Court's statements in Lassiter constitute part of its rationale for *denying* a right to counsel in that case. We believe those statements are best read as pointing out that the Court previously had found a right to counsel "*only*" in cases involving incarceration, not that a right to counsel exists in *all* such cases . . . .

___ U. S. at ___ (III) (A) (emphases in original).

---

[8] See, e.g., Walker v. McLain, 768 F2d 1181, 1185 (10th Cir. 1985); Sevier v. Turner, 742 F2d 262, 267 (II) (6th Cir. 1984); Ridgway v. Baker, 720 F2d 1409, 1413-1415 (5th Cir. 1983); Pasqua v. Council, 892 A2d 663, 674 (II) (B) (N.J. 2006); Peters-Riemers v. Riemers, 663 NW2d 657, 664-665 (IV) (N.D. 2003); Black v. Division of Child Support Enforcement, 686 A2d 164, 167-168 (II) (Del. 1996); Mead v. Batchlor, 460 NW2d 493, 503 (IV) (Mich. 1990).

Moreover, aside from "criminal prosecutions or proceedings functionally akin to a criminal trial," the United States Supreme Court "has *never* found in the Due Process Clause a categorical right to appointed counsel."[9] Turner, ___ U. S. at ___ (Thomas, J., dissenting) (citation and punctuation omitted; emphasis supplied). See also Lassiter, 452 U. S. at 31 (II) (C) (no categorical right to appointed counsel in proceedings to terminate parental rights); Vitek v. Jones, 445 U. S. 480, 499 (100 SCt 1254, 63 LE2d 552) (1980) (Powell, J., concurring) (no categorical right to appointed counsel with respect to transfer of inmate to mental hospital); Middendorf v. Henry, 425 U. S. 25, 48 (III) (96 SCt 1281, 47 LE2d 556) (1976) (no categorical right to counsel in summary court-martial proceedings); Jeanne Charn, "Celebrating the 'Null' Finding: Evidence-Based Strategies For Improving Access to Legal Services," 122 Yale

---

[9] In In re Gault, 387 U. S. 1, 35-42 (87 SCt 1428, 18 LE2d 527) (1967), the Supreme Court held that the government must provide counsel for indigent juveniles in civil "juvenile delinquency" proceedings that could lead to incarceration as a matter of due process. But as both the majority and dissent in Turner noted, "[t]he civil juvenile delinquency proceeding at issue in Gault was little different from, and comparable in seriousness to, a criminal prosecution." Turner, ___ U. S. at ___ (III) (A) (citation and punctuation omitted). See also id. at ___ (Thomas, J., dissenting) ("Indeed, the only circumstance in which the Court has found that due process categorically requires appointed counsel is juvenile delinquency proceedings, which the Court has described as 'functionally akin to a criminal trial.'" (Citation omitted)).

L.J. 2206, 2217 (II) (A) (2013) ("The prospect of the Supreme Court recognizing a categorical right to counsel in civil cases is remote."). Especially instructive, we think, is Gagnon, 411 U. S. at 787 (III), in which the Supreme Court found no categorical right to appointed counsel in probation and parole revocation proceedings generally, but it acknowledged that, "[i]n some cases . . . the probationer's or parolee's version of a disputed issue can fairly be represented only by a trained advocate." Id. at 788 (III). Like the narrow class of contempt proceedings about which the plaintiffs in this case complain, the Supreme Court then turned in Gagnon from revocations generally to a narrow class of revocation proceedings in which the need for appointed counsel might be more substantial:

> [C]ases where, after being informed of his right to request counsel, the probationer or parolee makes such a request, based on a timely and colorable claim (i) that he has not committed the alleged violation of the conditions upon which he is at liberty; or (ii) that, even if the violation is a matter of public record or is uncontested, there are substantial reasons which justified or mitigated the violation and make revocation inappropriate, and that the reasons are complex or otherwise difficult to develop or present.

Id. at 790 (III). But even as to that particular class of revocation proceedings, the Supreme Court said that the circumstances rendered the appointment of counsel

11

only "*[p]resumptively*" necessary, not *absolutely* required. Id. (emphasis supplied).

We suppose that due process sometimes may require the appointment of counsel for an indigent parent in a civil contempt proceeding in which the parent is threatened with incarceration. And as in <u>Gagnon</u>, perhaps there is even a "presumptive" right to appointed counsel in some such proceedings if the parent is opposed by government lawyers.[10] But even so, presumptions sometimes can be overcome, and whether any particular parent is entitled to a lawyer at government expense depends always, we think, on the particular and unique circumstances of his case, including the complexity of the case, as well as the extent to which alternative measures might be employed to ensure that the proceeding is fundamentally fair. See <u>State v. Currier</u>, 295 P3d 837, 843-844 (Wyo. 2013). See also <u>Gagnon</u>, 411 U. S. at 790-791 (III). As the United States Supreme Court has reminded, "the requirements of due process are flexible and call for such procedural protections as the particular situation demands."

---

[10] For this reason, trial courts should consider advising unrepresented parents in such proceedings that they may have a right to request counsel.

<u>Wilkinson v. Austin</u>, 545 U. S. 209, 224 (IV) (125 SCt 2384, 162 LE2d 174) (2005) (citation and punctuation omitted).

The dissent posits that, even if the United States Constitution affords no categorical right to appointed counsel in civil contempt proceedings of the sort about which the plaintiffs complain, maybe the Georgia Constitution affords such a right. This is not the case, however, in which to decide that question.[11] Although the plaintiffs assert a categorical right under both the United States Constitution and the Georgia Constitution, they never have even attempted to make the case — in their pleadings, in their motions and briefs in the trial court on class certification, or in their appellate briefs — that the Georgia Constitution affords more procedural rights in civil contempt proceedings as a matter of due process than does the United States Constitution. To the extent they have mentioned the Georgia Constitution, they mention it only in passing, and almost

---

[11] We suppose that the guarantee of due process in the Georgia Constitution *might* afford more procedural rights in civil contempt proceedings about child support than the same guarantee in the United States Constitution, if only because our Court has not addressed that question before. We note, however, that this Court has held in a number of other contexts that the process due under the United States Constitution and the Georgia Constitution is the same. See, e.g., <u>DeKalb County School Dist. v. Ga. State Bd. of Ed.</u>, 294 Ga. 349, 369 (4) (a) (751 SE2d 827) (2013) (removal from public office); <u>Joiner v. Glenn</u>, 288 Ga. 208, 209 (702 SE2d 194) (2010) (termination of public employment); <u>Britt v. Smith</u>, 274 Ga. 611, 614 (556 SE2d 435) (2001) (guilty plea).

always alongside a reference to the United States Constitution (or cases concerning the United States Constitution). Nowhere in the papers filed by the plaintiffs do we find a reasoned argument — supported by an analysis of the pertinent constitutional text, structure, and history — that the guarantee of due process in the Georgia Constitution means something more in this context than the same guarantee in the United States Constitution. See Grady v. Unified Govt. of Athens-Clarke County, 289 Ga. 726, 731 (2) (b), n. 3 (715 SE2d 148) (2011). Nor do we find such an argument in the dissent, which simply muses that the Georgia Constitution *might* afford more process than the United States Constitution. We will not hang our decision on an argument that no one has made, and for the purposes of this appeal, we accept — as the parties seem to have accepted throughout this case — that the process due in this context under the United States Constitution and the Georgia Constitution is the same.

We do not decide in this case precisely when, if ever, a lawyer must be appointed for an indigent parent in a civil contempt proceeding about child support. We conclude only that there is no absolute, inflexible, and categorical right to appointed counsel in such proceedings as a matter of due process, even when the Department, represented by its own lawyers, pursues the incarceration

14

of an indigent parent.[12] That is enough to resolve this case. Because there is no

categorical right, whether any named plaintiff or other member of the class even

has a right to appointed counsel in any particular civil contempt proceeding

depends upon highly individualized considerations. Accordingly, the plaintiffs

cannot show commonality of the claims asserted on behalf of the class, see

OCGA § 9-11-23 (a) (2), they cannot show that their own claims are typical of

those of the class, see OCGA § 9-11-23 (a) (3), and they cannot show that

classwide injunctive and declaratory relief is in order. See OCGA § 9-11-23 (b)

---

[12] We recognize, of course, that class certification is not intended to be a mechanism for deciding the merits of a case. See Gay v. B.H. Transfer Co., 287 Ga. App. 610, 612 (652 SE2d 200) (2007). Nevertheless, the inquiry required to decide class certification sometimes may involve "some overlap with the merits of the plaintiff's underlying claim. That cannot be helped. The class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." Wal-Mart Stores v. Dukes, ___ U. S. ___, ___ (II) (A) (131 SCt 2541, 180 LE2d 374) (2011) (citation and punctuation omitted). See also McGarry v. Cingular Wireless, 267 Ga. App. 23, 25 (1) (599 SE2d 34) (2004). "Merits questions may be considered to the extent — but only to the extent — that they are relevant to determining whether the . . . prerequisites for class certification are satisfied." Amgen, Inc. v. Conn. Retirement Plans & Trust Funds, ___ U. S. ___, ___ (II) (A) (133 SCt 1184, 185 LE2d 308) (2013) (citations omitted). Here, whether the named plaintiffs and the class have a categorical right to appointed counsel in the proceedings about which they complain is "both a merits question and a class question," Carnett's, Inc. v. Hammond, 279 Ga. 125, 129 (4) (610 SE2d 529) (2005), and it is one, therefore, that we properly may address on class certification. We note as well that the question is a purely legal one, and no discovery or resolution of factual issues is necessary to determine if the Constitution *categorically* requires counsel in these sorts of proceedings. See Phillips v. Asset Acceptance, 736 F3d 1076, 1081 (7th Cir. 2013).

(2). For these reasons, the Court of Appeals was right to conclude that the trial court erred when it certified a class.

Judgment affirmed. All the Justices concur, except Benham, J., who concurs in part and dissents in part.

BENHAM, Justice, concurring in part and dissenting in part.

While I agree with the majority's conclusion in Division 1 of the opinion, I must respectfully dissent to the majority's final decision to affirm the Court of Appeals.

Our state constitution coupled with state statutory law requires that the Georgia Attorney General represent state executive agencies in any court of record.[13] That means our state law effectively grants to the Department of Human Services (DHS) a *categorical* right to be represented by a lawyer in any

_____

[13]"The Attorney General shall act as the legal advisor of the executive department, shall represent the state . . . in all civil . . .cases in any court when required by the Governor, and shall perform such other duties as shall be required by law." Ga. Const. of 1983 Art. V, Sec. III, Par. IV. See also OCGA § 45-15-3 (6) ("It is the duty of the Attorney General . . . [t]o represent the state in all civil actions tried in any court. . . .")

16

civil contempt proceeding against any parent, whether indigent or not, for nonpayment of child support. It is the State's position, however, that the parent in such proceeding, whether indigent or not, has no categorical right to be represented by counsel. If found to be in contempt, most indigent parents face incarceration because they lack the means to purge themselves of the contempt. For example, the trial court found in this case that appellant Miller owed $3,000, had less than a dollar in his bank account, and had no assets when he was found in contempt and incarcerated for nonpayment of child support. Had he had a categorical or automatic right to counsel, as does DHS under state law, perhaps he would have avoided jail when he clearly did not have the ability to pay.[14] Purposefully or not, the State has fostered a fundamentally unfair system for collecting child support from indigent parents. The system at issue is not sanctioned by the Turner v. Rogers, ___ U. S. ___ (131 SCt 2507, 180 LE2d 452) (2011) decision because, as the majority opinion concedes, that case specifically left open the question as to whether an indigent parent has the right to counsel in a civil contempt child support proceeding where the government

---

[14]The justification for incarceration in a contempt action is lost when the contemnor is unable to pay. Hughes v. Dept. of Human Resources, 269 Ga. 587 (2) (502 SE2d 233) (1998).

entity is represented by counsel.[15]  See <u>State v. Stone</u>, 165 Wash. App. 796, 814,

n. 12 (268 P3d 226) (2012) (<u>Turner</u> does not affect those civil contempt

proceedings where the indigent person owes payments to the state, lacks

representation by counsel, and the state is represented by counsel).

Furthermore, <u>Turner</u> does not preclude the litigants from being able to

proceed as a class on the merits under our state constitution.[16]  There are a few

post-<u>Turner</u> decisions where state courts have upheld the right to counsel in the

very circumstance left open by <u>Turner</u> as a matter of state statutory and/or state

constitutional law. See <u>Schochet v. Schochet</u>, 435 N.J. Super. 542, 545 (89 A3d

1264) (2014) (implies that case law bestowing indigent parents the right to

---

[15]     The <u>Turner</u> court specifically stated:
We do not address civil contempt proceedings where the underlying child support payment is owed to the State[.] [Cit.] Those proceedings more closely resemble debt-collection proceedings. The government is likely to have counsel or some other competent representative. Cf. <u>Johnson v. Zerbst</u>, 304 U.S. 458, 462-463, 58 S.Ct. 1019, 82 L.Ed. 1461) (1938) ("[T]he average defendant does not have the professional legal skill to protect himself when brought before a tribunal with power to take his life or liberty, wherein the prosecution is presented by experienced and learned counsel " (emphasis added)). And this kind of proceeding is not before us.
131 SCt at 2520.  Appellants in this case have been sued by DHS for any arrearage owed to their children *and* for reimbursement of welfare benefits paid by the State.

[16]Appellants specifically alleged a claim for violation of Article I, Section I, Paragraphs I (the right to due process), II (equal protection of the laws) and XIV (the right to counsel and to confront witnesses) of the Georgia Constitution.

2

counsel in child support contempt proceedings is still viable under the New Jersey Constitution); Crain v. Crain, 2012 WL 6737836 (Ohio App. Dec. 28, 2012) (state statute gave indigent parents the right to counsel in child support contempt proceedings; said statute was not abrogated by Turner because a state agency brought the case and was represented by counsel). What's more, this case is even more distinguishable from Turner by virtue of the fact that Georgia law effectively bestows upon DHS a categorical right to counsel, as opposed to the agency simply having an optional policy of being represented by lawyers at such proceedings. Such circumstance clearly was not addressed by Turner.[17] Thus I believe there is still a viable state constitutional claim on the merits to be resolved.[18] I am not persuaded by the majority's contention that this case

[17]The facts in Turner show that the clerk of the South Carolina family court would review delinquent child support orders and issue to non-compliant parents "show cause" orders requiring them to appear and show why they should not be held in contempt. Id. at 2512. No agency of the state was a party to the proceedings. Id. at 2512-2513, 2519. Also, Turner's appeal was predicated on the federal constitution only. Id. at 2514.

[18]"It is a well-recognized principle that a state court is free to interpret its state constitution in any way that does not violate principles of federal law, and thereby grant individuals more rights than those provided by the U.S. Constitution." Powell v. State, 270 Ga. 327, 331, n. 3 (510 SE2d 18) (1998). Indeed, in some instances, we have held that the Georgia Constitution affords our citizens broader rights than the federal constitution. See, e.g., Statesboro Publishing Co. v. City of Sylvania, 271 Ga. 92 (2) (516 SE2d 296) (1999) (Georgia Constitution affords broader free speech protection than the First Amendment of the U.S. Constitution); Grissom v. Gleason, 262 Ga. 374, n. 1 (418 SE2d 27) (1992)

cannot go forward because appellants' express citation to the Georgia Constitution in their complaint was too "passing" in nature to be considered[19] or because appellants have not made a specific argument regarding the scope of our state constitution in this context.[20] We are only deciding the issue of class certification and there is no reason to deny certification simply because the record has not been developed fully on the merits at this stage of the litigation.[21] I cannot agree with the majority's conclusion that there is no case here as far as our state constitution is concerned or that the issue of class certification is so

(Georgia Constitution's equal protection provision may provide greater rights than U.S. Constitution); Green v. State, 260 Ga. 625, 627, (398 SE2d 360) (1990) (Georgia Constitution provides broader protection than U.S. Constitution for right against self-incrimination); Fleming v. Zant, 259 Ga. 687, 690 (386 SE2d 339) (1989) (Georgia Constitution provides greater protection against cruel and unusual punishment than U.S. Constitution); Colonial Pipeline Co. v. Brown, 258 Ga. 115 (3) (365 SE2d 827) (1988) (Georgia Constitution provides greater protection against excessive fines and forfeitures than U.S. Constitution).

[19]Appellants need only meet the minimal requirements of notice pleading to set forth a claim. See Duffield v. Chui, 314 Ga. App. 214, 215, n. 3 (723 SE2d 506) (2012).

[20]Appellants have made the argument that this case fits squarely in the question left open by Turner which question is broad enough to encompass any state constitutional issues. Furthermore, appellants made a supplemental filing in this appeal alerting this Court to the decision in Crain v. Crain, supra, an action which indicates to me that they are in fact pursuing the state constitutional claims raised in their complaint.

[21]See MCG Health, Inc. v. Perry, 326 Ga. App. 833, 835 (1) (755 SE2d 341) (2014) ("In determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits(,) but whether the requirements of OCGA § 9-11-23(a) have been met.")

4

inextricably tied to the underlying merits that certification of the class is foreclosed.[22] Given the question left open by Turner and the state constitutional issues in this case, the trial court did not abuse its discretion when it certified the class.[23] Accordingly, I would reverse the Court of Appeals and uphold the trial court's order granting class certification.

Decided July 11, 2014.

Certiorari to the Court of Appeals of Georgia – 321 Ga. App. 220.

Gerald R. Weber, Jr., Atteeyah E. Hollie, Sarah E. Geraghty, for appellants.

---

[22]Other than citing the lack of a categorical right to an attorney under the federal constitution per Turner, the majority opinion contains no discussion of how the class lacks commonality or typicality. All of the named plaintiffs and proposed class members are indigent; they have all been subject to child support contempt proceedings in which DHS is represented by counsel; they have all been incarcerated for non-payment of child support; and they have not been appointed counsel in their contempt proceedings.

[23]See State Farm Mutual Auto. Ins. Co. v. Mabry, 274 Ga. 498, 499-500 (1) (556 SE2d 114) (2001) ("On appellate review of a trial court's decision on a motion to certify a class, the discretion of the trial judge in certifying or refusing to certify a class action is to be respected in all cases where not abused.") (citation and punctuation omitted).

Samuel S. Olens, Attorney General, Dennis R. Dunn, Deputy Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Jason S. Naunas, Mark J. Cicero, Assistant Attorneys General, for appellees.