**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and BOGGS, JJ.**

NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

July 11, 2012

# In the Court of Appeals of Georgia

A12A0776. SAULS v. ATCHISON et al.

BOGGS, Judge.

William Christopher Sauls appeals from the judgment of the Baldwin Superior Court terminating his parental rights in connection with an adoption. He asserts that service of process was insufficient, that the trial court's order is deficient, and that the trial court erred in terminating his parental rights and issuing a decree of adoption. We find that service of process was sufficient and affirm with respect to that finding, but because the trial court's decree fails to set forth the mandatory findings of fact and conclusions of law pursuant to OCGA § 19-8-18 (b), we vacate the judgment and remand with direction.

Sauls and the child's mother were never married, but Sauls acknowledged paternity under OCGA § 19-7-21.1(b).[1] The child was born in 2005, while the father and mother lived in Warner Robins, Georgia. In 2006, the parents separated, and Sauls later moved to the Atlanta area. In 2007, the mother requested that the Atchisons, Sauls' mother and stepfather, take custody of the child, and the Baldwin

---

[1]OCGA § 19-7-21.1 (b) provides:
Prior to the child's first birthday, a father of a child born out of wedlock may render his relationship with the child legitimate when both the mother and father have freely agreed, consented, and signed a voluntary acknowledgment of paternity and an acknowledgment of legitimation [State Vital Records form 3940] which have been made and have not been rescinded pursuant to Code Section 19-7-46.1.

This statute, however, circumvents the safeguards inherent in our legitimation statute, OCGA § 19-7-22, which requires a petition in Superior Court and a finding that legitimation is in the best interest of the child. There is no statutory time frame for the filing of these forms and thus no meaningful way for the courts or attorneys to know whether the form has been signed. On occasion this causes the filing of unnecessary petitions for legitimation, and could potentially cause inconsistent findings as well. In short, under OCGA § 19-7-21.1, the mother and any male may agree – whether by mistake or by plan – to have someone other than the biological father sign this form. And a male who simply signs a pre-printed form in the hospital (or within 12 months thereafter) is by that minimal act alone placed on the same legal footing as a father whose paternity has been judicially determined with the benefit of formal notice, evidence and a hearing at which the court must determine whether legitimation is in the best interest of the child. While in this case we find that service on Sauls was proper, there is obvious potential for this statutory acknowledgment to create significant difficulties for our trial judges and practitioners. However, this is for the General Assembly, not this court, to address.

2

County Probate Court issued temporary letters of guardianship. In 2010, the Atchisons filed this petition for adoption under OCGA § 19-8-10.

After receiving extensive evidence, including two days of testimony, the trial court found that (1) Sauls significantly failed for over one year, without justifiable cause, to communicate or attempt to communicate with the child; (2) Sauls significantly failed to support the child financially; and (3) adoption by the Atchisons would be in the child's best interest. The trial court then granted the petition for adoption.[2] This appeal followed.

1. Sauls contends that the trial court erred in failing to dismiss this action because he was not properly served. Service of an adoption petition on a parent is governed by the provisions of OCGA § 19-8-10 (c):

> Whenever it is alleged by any petitioner that surrender or termination of rights of a parent is not a prerequisite to the filing of a petition for adoption of a child of that parent in accordance with subsection (a) or (b) of this Code section, that parent shall be personally served with a conformed copy of the adoption petition, together with a copy of the court's order thereon specified in Code Section 19-8-14, or, if personal service cannot be perfected, by registered or certified mail or statutory

---

[2]The mother's parental rights were also terminated in the same order, but she is not a party to this appeal.

3

overnight delivery, return receipt requested, at his last known address. If service cannot be made by either of these methods that parent shall be given notice by publication once a week for three weeks in the official organ of the county where the petition has been filed and of the county of his last known address. A parent who receives notification pursuant to this paragraph may appear in the pending adoption action and show cause why such parent's rights to the child sought to be adopted in that action should not be terminated by that adoption.

We have held that the trial court did not err in allowing service by publication upon a father in a termination action when the father "abdicated his parental responsibilities" by failing to contact DFACS about his children in foster care or tell caseworkers his address. *In the Interest of T. B. R.,* 224 Ga. App. 470, 478 (3) (480 SE2d 901) (1997) (construing OCGA § 15-11-39.1, formerly OCGA § 15-11-27, to allow service by publication in juvenile proceedings "after reasonable effort"). In *T. B. R.*, we observed that the father's expectation of "extraordinary, perhaps even futile, efforts to locate him" was "without statutory support and would place an undue burden on DF[A]CS, particularly in a case where a parent's extended and unexplained absence is one basis for the termination proceeding." (Citations and footnote omitted.) Id.

Here, the Atchisons personally served the mother, but in their verified petition they alleged that they did not know Sauls' address, that he refused to divulge his whereabouts to them, and that they were unable to serve him personally or by mail. Accordingly, they requested service by publication. Sauls appeared and filed a verified response to the petition, but he did not directly assert insufficiency of process, stating only that the Atchisons' claim not to know his whereabouts was false because they were "friends" on his social media page.[3] At the end of the first day's testimony, Sauls orally moved to dismiss on this ground.[4]

Evidence was presented to the trial court that Sauls was in telephone contact with the Atchisons but refused to divulge his physical whereabouts or his residence address to them, other than that it was somewhere in the Atlanta area. In 2007, Sauls gave the Atchisons' lawyer a work address in Tucker, and in 2008 he gave his mother a general work location in Little Five Points, but did not give her a residence address. Before filing the petition for adoption, the Atchisons attempted to set up a meeting

[3]Sauls does not explain how electronic contact via a cellular telephone or a social media site can establish his physical whereabouts or his residence.

[4]We need not reach the question of whether Sauls waived this defense by his failure to assert it at the earliest opportunity. See *Tavakolian v. Agio Corp.*, 304 Ga. App. 660, 662-663 (1) (697 SE2d 233) (2010).

5

through Sauls' younger brother, but Sauls again refused to give a residence address for the meeting place, offering instead to meet at a restaurant near Conyers and ultimately not meeting with the Atchisons at all. At the hearing, Sauls testified that he still considered his Warner Robins address his residence, but his fiancée testified that from 2009, Sauls resided with her in Smyrna and later in Woodstock, Georgia, and that he worked in College Park.

This evidence supports a conclusion that Sauls not only failed to give a residence address to the custodians of his child, as in *T. B. R.*, supra, but actively and deliberately concealed his whereabouts from them. Under these circumstances, service by publication was permissible. See generally *Melton v. Johnson*, 242 Ga. 400, 402 (249 SE2d 82) (1978). The trial court did not abuse its discretion in denying Sauls' motion to dismiss for insufficiency of service.

2. Sauls next contends that the trial court's orders are "facially defective" because they fail to include findings of fact and conclusions of law. In terminating Sauls' parental rights, the trial court recited only that "William Christopher Sauls for a period of at least one (1) year immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed to communicate or to make a bona fide attempt to communicate with [the child] in a meaningful,

6

supportive, parental manner," and that "William Christopher Sauls for a period of at least one (1) year immediately prior to the filing of the petition for adoption, [failed] without justifiable cause to provide for the care and support of [the child] as required by law." The order contains no separate findings of fact.

OCGA § 19-8-18 (b) provides: "In all cases wherein Code Section 19-8-10 is relied upon by any petitioner as a basis for the termination of parental rights, the court shall include in the decree of adoption appropriate findings of fact and conclusions of law relating to the applicability of Code Section 19-8-10." In *Maynard v. Brown*, 276 Ga. App. 229 (622 SE2d 901) (2005), we determined that "[a] judgment having such a final, ultimate and significant result as that of severing the rights of a parent to a child must conclusively show compliance with the statutory criteria prescribed as a condition precedent for such termination." (Citations and punctuation omitted.) Id. at 231. "The decree must present more than a mere legal conclusion which is not supported by mandatory findings of fact, or a dry recitation that certain legal requirements have been met." (Citations and punctuation omitted.) Id.

In the absence of *any* specific findings of fact to support the trial court's recitation of the language of the statute, we are constrained to remand this case to the trial court with the direction that it enter a new decree with specific findings of fact

7

and conclusions of law pursuant to OCGA §19-8-18 (b). We therefore do not reach Sauls' contentions with regard to the termination and adoption, and we express no opinion upon the merits of those contentions.

*Judgment affirmed in part, vacated and remanded in part. Mikell, P. J., and Miller, J., concur.*