**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and BRANCH, J.**

**NOTICE: Motions for reconsideration must be
*physically received* in our clerk's office within ten
days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules/**

**July 15, 2013**

# In the Court of Appeals of Georgia

A13A0757. RAY v. HANN.

A13A0821. RAY v. HANN.

ELLINGTON, Presiding Judge.

In Case No. A13A0757, Anthony Shane Ray appeals from orders of the Superior Court of Floyd County granting Johnny Hann, Jr.'s step-parent petition to adopt Ray's minor child, A. C. R., and terminating Ray's parental rights to the child. In Case No. A13A0821, Ray appeals from an order of the Superior Court of Floyd County denying his petition to legitimate A. C. R.[1] Because the underlying cases were consolidated below, resolved in the same evidentiary hearing, and involve the same

---

[1] This Court granted Ray's application for discretionary review of the orders appealed.

facts, we consolidate these appeals. For the reasons that follow, we reverse in part, vacate in part, and remand to the superior court.

*Case No. A13A0821*

1. Ray contends the trial court erred in denying his petition to legitimate A. C. R. Because this issue affects Ray's legal status with respect to the child, we address it first. For the following reasons, we reverse the superior court's order denying Ray's legitimation petition.

"We review a trial court's ruling on a legitimation petition for abuse of discretion. We review the court's factual findings, however, for clear error and will only sustain such findings if there is competent evidence to support them." (Citations and punctuation omitted.) *Neill v. Brannon*, 320 Ga. App. 820 (1) (738 SE2d 724) (2013).

The record shows the following relevant facts. On May 27, 2008, Nancy Peterson (now Nancy Hann) gave birth to A. C. R. at Floyd Medical Center. It is undisputed that Ray, who was never married to Peterson, is A. C. R.'s biological father, and he attended the birth. On the official birth certificate, the hospital listed

Ray as the child's father, and the child was given Ray's surname.[2] The Putative Father Registry maintained by the State Office of Vital Records also identified Ray as A. C. R.'s putative father.

On May 29, 2008, before leaving the hospital, Ray and Peterson both signed a form entitled "Paternity Acknowledgment – State of Georgia." In addition to acknowledging Ray's biological paternity, the form contained a statement by both Ray and Peterson in which they agreed and consented that Ray's relationship with A. C. R. "shall be considered legitimate for all purposes under the law pursuant to OCGA § 19-7-22 (g) (2)."[3] Peterson admitted signing the paternity and legitimation acknowledgment form, stating that she "didn't oppose [signing] it."

---

[2] When a live birth occurs in a hospital within the state, the hospital is required to file a birth certificate with the State Office of Vital Records within 72 hours of the birth. OCGA § 31-10-9 (a), (b). If the mother is unmarried at the time of conception or birth, the hospital may not list the putative father's name on the birth certificate without the written consent of the mother and the putative father. OCGA § 31-10-9 (e) (2). Except as otherwise provided, "[w]hen a paternity acknowledgment is completed, the surname of the child shall be entered as designated by both parents." OCGA § 31-10-9 (e) (5).

[3] See 1-V Georgia Domestic Relations Forms 5.1 ("[The Paternity Acknowledgment Form] is maintained by Vital Records as part of the permanent record in support of the Certificate of Live Birth, so the practitioner can request a copy from Vital Records to determine if a child's relationship to a man has been administratively legitimated.").

Months later, Peterson and Ray ended their relationship. In September 2010, Peterson married Hahn; in May 2012, Hann filed a petition to adopt A. C. R. Ray filed a petition to legitimate A. C. R. and opposed the adoption. After a hearing, the trial court denied Ray's petition to legitimate A. C. R., terminated Ray's parental rights, and granted Hann's petition to adopt the child.

In Georgia, legitimation is the statutory legal process through which a biological father becomes the legal father of a child born out of wedlock.[4] When A. C. R. was born, legitimation could be effected through court proceedings as provided in OCGA § 19-7-22. In addition to judicial legitimation, OCGA § 19-7-22 (g) (2) provided for non-judicial or administrative legitimation, as follows: "In any voluntary acknowledgment of paternity which has been made and has not been rescinded pursuant to Code Section 19-7-46.1, when both the mother and father freely agree and

---

[4] See *In re Pickett*, 131 Ga. App. 159, 160 (205 SE2d 522) (1974). See also OCGA § 19-8-1 (6) ("Legal father" includes males who have "legitimated the child by a final order pursuant to Code Section 19-7-22" or males who have "legitimated the child pursuant to Code Section 19-7-21.1."); see also OCGA § 19-7-21.1 (a) (2) (F) (2009) ("Legal father" means a male who . . . [h]as legitimated a child pursuant to this Code section and who has not surrendered or had terminated his rights to the child.").

consent, the child may be legitimated by the inclusion of a statement indicating a voluntary acknowledgment of legitimation."[5]

In this case, the acknowledgment satisfies the requirements of OCGA § 19-7-22 (g) (2). Ray and Peterson both signed a form which contained an acknowledgment of paternity and an acknowledgment of legitimation; they signed the form voluntarily; Peterson did not rescind the form within 60 days as provided in OCGA § 19-7-46.1; and the form was filed with the Office of Vital Records as required by OCGA § 19-7-46.1. We must conclude, therefore, that Ray's relationship with A. C. R. was rendered legitimate. Because Ray has demonstrated compliance

---

[5] OCGA § 19-7-22 (g) (2) was enacted in 2005 "to provide for legitimation by a voluntary acknowledgment of paternity in certain circumstances." See Ga. L. 2005, p. 1491, § 1. See also 1-V Georgia Domestic Relations Forms 5.1. A new Code section, OCGA § 19-7-21.1, became effective on July 1, 2008, over a month after A. C. R. was born. See Ga. L. 2008, p. 667, § 4. This Code section provided for rights and remedies in the administrative legitimation process similar to those that applied to acknowledgments of paternity; it also added new limitations on administrative legitimation. For example, the acknowledgment of legitimation must be made before the child's first birthday, OCGA § 19-7-21.1 (b); the legitimation will not be recognized if certain conditions are present, OCGA § 19-7-21.1 (c); and the rights and remedies applicable to acknowledgments of paternity contained in OCGA § 19-7-46.1, also expressly apply to acknowledgments of legitimation, OCGA § 19-7-21.1 (b). The new Code section provides that "[v]oluntary acknowledgment of legitimation shall not authorize the father to receive custody or visitation until there is a judicial determination of custody or visitation." OCGA § 19-7-21.1 (e). See *Sauls v. Atchison*, 316 Ga. App. 792, n.1 (730 SE2d 459) (2012).

with the applicable statutory prerequisites of administrative legitimation, and because the record contains no evidence upon which the acknowledgment of legitimation may be set aside,[6] he remains the child's legal father unless and until his parental rights have been terminated in compliance with the law governing such terminations. See Division 2, infra. Given Ray's status as the child's legal father, the court's order denying the petition to legitimate was an abuse of discretion and must be reversed.

We note that the court below was critical of the legitimation acknowledgment form at issue in this case because it failed to comply with all of the requirements of OCGA § 19-7-21.1, and it appears that the form used in this case indeed did little to inform the parties of the legal consequences of signing it.[7] We find no authority, however, for applying those requirements retroactively, as the trial court apparently did in this case. We must evaluate the effect of the acknowledgment of legitimation

---

[6] OCGA § 19-7-46.1 (c) provides that, after the expiration of the 60 day rescission period, the signed voluntary acknowledgment of legitimation "may be challenged in court only on the basis of fraud, duress, or material mistake of fact, with the burden of proof on the person challenging the acknowledgment."

[7] See *Sauls v. Atchison*, 316 Ga. App. at 792, n. 1 ("[T]here is obvious potential for this statutory acknowledgment to create significant difficulties for our trial judges and practitioners. However, this is for the General Assembly, not this court, to address."). "Most critical is the fact that absent from the administrative legitimation process is a finding that the legitimation is in the best interest of the child." 1-V Georgia Domestic Relations Forms 5.1.

6

made in this case under the law as it then existed, which was OCGA § 19-7-22 (g) (2).[8]

*Case No. A13A0757*

2. Ray contends that the trial court erred in terminating his parental rights and granting the petition for adoption, arguing that there was insufficient clear and convincing evidence to support the court's rulings. We do not reach the merits of Ray's claims, however, because the trial court did not make the requisite findings of fact and conclusions of law in either its order terminating Ray's parental rights or in the adoption decree.

Generally, a stepparent may adopt his or her spouse's child only if the biological parent whose rights will terminate with the adoption "voluntarily and in writing surrenders all of his [or her] rights to the child to [the stepparent] for the

---

[8] It is well settled that "legislation which involves mere procedural or evidentiary changes may operate retrospectively; however, legislation which affects substantive rights may only operate prospectively. The distinction is that a substantive law creates rights, duties, and obligations while a procedural law prescribes the methods of enforcing those rights, duties, and obligations." (Citations omitted.) *Fowler Properties v. Dowland*, 282 Ga. 76, 78 (1) (646 SE2d 197) (2007). OCGA § 19-7-22 (g) (2), by allowing Ray to acquire the status of the child's legal father, creates rights, duties, and obligations comprising the most "fundamental and fiercely guarded" of substantive legal rights. (Citation omitted.) *In the Interest of J. M. B.*, 296 Ga. App. 786, 789 (676 SE2d 9) (2009).

purpose of enabling [the stepparent] to adopt the child[.]" OCGA § 19-8-6 (a) (1). If the biological parent refuses to surrender his or her parental rights, OCGA § 19-8-10 provides that the court may nevertheless terminate the biological parent's rights and grant the stepparent's petition to adopt the child if it finds, among other things, that there is clear and convincing evidence that the parent has abandoned the child,[9] that "the parent has failed to exercise proper parental care or control due to misconduct or inability, as set out in paragraph (2), (3), or (4) of subsection (b) of Code Section 15-11-94," or that the parent,

> for a period of one year or longer immediately prior to the filing of the petition for adoption, without justifiable cause, has significantly failed: (1) To communicate or to make a bona fide attempt to communicate with that child in a meaningful, supportive, parental manner; or (2) To provide for the care and support of that child as required by law or judicial decree[.]

---

[9] In order to authorize a finding of abandonment under that Code section, there must be clear and convincing evidence of an "actual desertion, *accompanied by an intention to sever entirely*, as far as possible to do so, the parental obligations growing out of the [parent/child relationship], and forego all parental duties and claims." (Punctuation and footnote omitted; emphasis in original.) *Hall v. Coleman*, 264 Ga. App. 650, 653 (1) (592 SE2d 120) (2003).

OCGA § 19-8-10 (a) (1), (a) (4); OCGA § 19-8-10 (b).[10] See also *Johnson v. Taylor*, 292 Ga. App. 354 (665 SE2d 49) (2008) (This Court applies the clear and convincing evidence standard when considering the sufficiency of evidence in adoption cases involving the termination of parental rights.). "It is the petitioner['s] burden to prove that termination of the [father's] parental rights is warranted, including the lack of justifiable cause." (Punctuation and footnote omitted.) *Smallwood v. Davis*, 292 Ga. App. 173, 175 (1) (664 SE2d 254) (2008). "[T]he words 'without justifiable cause' as used in [OCGA] § 19-8-10 (b) are constitutionally significant. The Due Process Clause gives a parent substantial protection of his or her parental rights requiring that clear and convincing evidence of unfitness be shown before a natural parent's rights in his child may be terminated." (Punctuation and footnote omitted.) Id. We note that

> [j]ustifiable cause for the failure to pay child support may be found in situations where the parent has been unable to earn income due to incarceration, mental illness, mental incapacity, hospitalization, or other circumstances beyond his or her control. Each case must be decided on its own circumstances. . . . Incarceration does not per se give rise to justifiable cause for failure to pay support; rather it is simply one factor to be considered.

---

[10] The General Assembly amended OCGA § 9-8-10 (a) (4) in 2013, effective January 1, 2014. Ga. L. 2013, p. 127, §§ 4-25; 5.1.

9

(Citation and punctuation omitted.) *In re Marks*, 300 Ga. App. 239, 245 (2) (b) (684 SE2d 364) (2009).

If the petitioner meets that burden of proof and the court finds that one of the above circumstances exists, then the court must also determine whether the proposed adoption is in the best interest of the child. OCGA § 19-8-10 (a) (1), (b).

> With regard to the best interest test in adoption cases, the trial court has very broad discretion with which this Court will not interfere except in cases of plain abuse. However, a court is not allowed to terminate a parent's natural right because it has determined that the child might have better financial, educational or even moral advantages elsewhere. Only under compelling circumstances found to exist by clear and convincing proof may a court sever the parent-child custodial relationship. The requirements of Georgia's adoption statutes are mandatory and must be strictly construed in favor of the natural parents, because the application thereof results in the complete and permanent severance of the parental relationship.

(Citations, punctuation, and emphasis omitted.) *In re Marks*, 300 Ga. App. at 242-243.

We are unable to evaluate whether the court erred in terminating Ray's parental rights pursuant to OCGA § 19-8-10 (b) because the trial court did not make specific factual findings and conclusions of law with respect to these criteria. Although the

10

court concluded that Ray had not communicated with A. C. R. or provided support for a period of time given the fact that Ray had been incarcerated, the court did not conclude that Ray had abandoned A. C. R. within the meaning of the law or make specific factual findings or conclusions of law concerning the issue of justifiable cause. The court did not address any of the criteria for termination pursuant to OCGA § 15-11-94. The court's conclusion that adoption was in the child's best interest is also lacking in particularity.

Further, OCGA § 19-8-18 (b) provides: "In all cases wherein Code Section 19-8-10 is relied upon by any petitioner as a basis for the termination of parental rights, the court shall include in the decree of adoption appropriate findings of fact and conclusions of law relating to the applicability of Code Section 19-8-10." In *Maynard v. Brown*, 276 Ga. App. 229 (622 SE2d 901) (2005), we determined that "[a] judgment having such a final, ultimate and significant result as that of severing the rights of a parent to a child must conclusively show compliance with the statutory criteria prescribed as a condition precedent for such termination." (Citations and punctuation omitted.) Id. at 231. "The decree must present more than a mere legal conclusion which is not supported by mandatory findings of fact, or a dry recitation

11

that certain legal requirements have been met." (Citations and punctuation omitted.) Id.

In the absence of specific findings of fact to support the trial court's conclusion that the requisites of OCGA § 19-8-10 (b) have been met, we are constrained to vacate the court's order terminating Ray's parental rights, as well as the adoption decree, and to remand this case to the trial court with the direction that it enter a new decree with specific findings of fact and conclusions of law as required by OCGA § 19-8-18 (b). We therefore do not reach Ray's contentions with regard to the termination and adoption, and we express no opinion upon the merits of those contentions.

*Judgment vacated and case remanded in Case No. A13A0757. Judgment reversed in Case No. A13A0821. Phipps, C. J., and Branch, J., concur.*

12