BOGGS, Judge,
concurring fully and specially.
I concur with the majority and all that is said there. I write to reiterate my concerns about the unintended consequences of the administrative legitimation process. Rife with frailties, the process is unquestionably inequitable and susceptible to fraud, in irreconcilable conflict with the body of Georgia law on legitimation and adoption, and potentially violative of the constitutional protections guaranteed to biological fathers and their children.
Before 2005, legitimation of a child was reposed in the discretion of the superior court under OCGA § 19-7-22 (a), or of the juvenile court under OCGA § 19-7-22 (d). Inherent in this statutory framework is the recognition that “[i]n making this determination, the court must examine the benefits that might flow to the child if he were *442 legitimated and to consider the legal consequences of the grant of the petition” and may only be reversed for an abuse of discretion.[7] (Citation and punctuation omitted.) Caldwell v. Meadows, 312 Ga. App. 70, 71 (1) (717 SE2d 668) (2011). This judicial oversight includes an inquiry into whether the biological father has abandoned his opportunity interest, his fitness as a parent, and the best interest of the child. Id.; see also Binns v. Fairnot, 292 Ga. App. 336, 337 (665 SE2d 36) (2008). On occasion, this inquiry demands a finding that legitimation is not in the best interest of the child. The court may find, for example, that the attempted legitimation is for some improper purpose, that the father has a history of intractable substance abuse, mental health, family violence or criminal history issues that pose an unreasonable risk to the child, or that the child’s current status quo should not be disrupted.
The most important aspect of this statutory framework is the objective scrutiny afforded by judicial oversight and the mandate that petitions should only be granted when doing so is in the best interest of the child. However, in direct contravention of this process, OCGA § 19-7-21.1 (b), and its predecessor, OCGA § 19-7-22 (g) (2), permit legitimation via a voluntary, administrative process without any oversight whatsoever, judicial or otherwise.
Ga. L. 2005, p. 1491, § 1 created for the first time a nonjudicial process for the acknowledgment of paternity and legitimation, codified in OCGA § 19-7-22 (g) (2):
In any voluntary acknowledgment of paternity which has been made and has not been rescinded pursuant to Code Section 19-7-46.1, when both the mother and father freely agree and consent, the child may be legitimated by the inclusion of a statement indicating a voluntary acknowledgment of legitimation.
The proponents of this amendment contended that legitimation was necessary for the father of a child born out of wedlock to obtain visitation and to provide for inheritance, but this is not accurate.[8] See, e.g., OCGA § 53-2-3 (2) (A), enumerating five methods by which *443 a father may legitimate; OCGA § 19-7-51, providing for visitation privileges upon a determination of paternity, albeit by court order; OCGA § 19-7-22 (c), specifically providing for inheritance. James B. Outman, “Special Topics in Adoption Law & Practice in Georgia,” Institute of Continuing Legal Education, November 7, 2008, at 2-3.[9]
In 2008, the General Assembly added to SB 88, the “Care of a Grandchild Act,” a provision establishing a new Code section, OCGA § 19-7-21.1, with a more elaborate procedure for the administrative acknowledgment of paternity and legitimation. Ga. L. 2008, p. 667, § 4. The Department of Vital Records promulgated a revised form, Form 3940, in response to these changes. But the legislature failed to delete OCGA § 19-7-22 (g) (2) and failed to amend other related Code sections, creating yet more statutory conflict in the areas of guardianship and inheritance. For example, the appeal before us is a direct result of the failure to amend the inheritance statutes to conform with OCGA § 19-7-21.1. See Outman, Special Topics, supra, at 8-11.[10] Moreover, the revision provided that “[voluntary acknowledgment of legitimation shall not authorize the father to receive custody or visitation until there is a judicial determination of custody or visitation,” OCGA § 19-7-21.1 (e), apparently negating the original expressed intention of the proponents to provide for visitation.
Pursuant to OCGA § 19-7-22 (g) (2), a form styled “Paternity Acknowledgment — State of Georgia” was created by the State Department of Vital Records and executed by Ridley and Hawkins in 2007. The majority correctly concludes that the acknowledgment as it existed at that time did not constitute a “sworn statement” for purposes of OCGA § 53-2-3 (2) (A) (iii).* [11] And it also correctly concludes that Hawkins did not in fact “sign” the birth certificate as *444 provided by OCGA § 53-2-3 (2) (A) (iv), although Georgia makes no apparent provision for him to do so.
In Sauls v. Atchison, 316 Ga. App. 792 (730 SE2d 459) (2012),[12] we noted that OCGA § 19-7-21.1 (b)
circumvents the safeguards inherent in our legitimation statute, OCGA § 19-7-22, which requires a petition in Superior Court and a finding that legitimation is in the best interest of the child. There is no statutory time frame for the filing of these forms and thus no meaningful way for the courts or attorneys to know whether the form has been signed. On occasion this causes the filing of unnecessary petitions for legitimation, and could potentially cause inconsistent findings as well. In short, under OCGA § 19-7-21.1, the mother and any male may agree — whether by mistake or by plan — to have someone other than the biological father sign this form. And a male who simply signs a pre-printed form in the hospital (or within 12 months thereafter) is by that minimal act alone placed on the same legal footing as a father whose paternity has been judicially determined with the benefit of formal notice, evidence and a hearing at which the court must determine whether legitimation is in the best interest of the child.
Id. at 793, n. 1. In Sauls, none of these issues was presented squarely for resolution by this court, nor in Allifi v. Raider, 323 Ga. App. 510, 513 (1), 515-516 (746 SE2d 763) (2013) (Ray, J., concurring specially and in judgment only), where the potential problems were noted again by both the majority and the concurring opinion. But now, we are presented with a case in which these anticipated problems come into clearer focus. See also Ray v. Hann, 323 Ga. App. 45, 47 (746 SE2d 600) (2013).
When, as here, the mother of a child born out of wedlock and a man known not to be the father deliberately misrepresent the facts in an administrative acknowledgment of paternity and legitimation, significant harm could result not only to the actual, biological father, *445 but to the child as well. This may and does occur without any judicial inquiry, without any attempt by a factfinder to determine actual paternity by means of a DNA test or otherwise, and without any finding that legitimation is in the child’s best interest, all in direct conflict with OCGA § 19-7-22 (a)-(f.l). And while in a particular case it may be laudable and even heroic for a man known not to be the father to accept the responsibilities of parenthood, this should not occur without some judicial oversight.
Opportunities for fraud and collusion abound in this flawed scheme. Not only to establish a false paternity to obtain dependent benefits, as was alleged in this case, but for revenge following a failed relationship, or for monetary gain through obtaining control over a minor child’s assets or claim for personal injury. Moreover, a man who signs the form believing himself to be the father, but later determines that he is not, may be bound to pay child support and to reimburse the State for public assistance paid to the mother, while the actual, biological father may be excused from his obligations. In all such cases, the opportunity to establish the true state of affairs and the best interest of the child, as well as due process of law for the child and the biological father, are frustrated by these statutes.
In essence, parties to an acknowledgment can unilaterally create a wholly fictitious father-child relationship, which is tantamount to an adoption without any of the procedural and due process safeguards of the adoption statutes for the actual, biological father — notice and an opportunity to be heard before his parental rights are terminated—or for the child’s best interest and natural right to have a relationship with the biological father. This failure to take into account due process concerns, the obligations and rights of the biological father and the rights of the child, could raise significant issues regarding the constitutionality of the administrative process.
Moreover, once a fraudulent administrative legitimation has occurred, there is no procedure under Georgia law for “the de-legitimation of a child” or “the disestablishment of paternity.” Ghrist v. Fricks, 219 Ga. App. 415, 419 (1) (465 SE2d 501) (1995), overruled on other grounds, Brine v. Shipp, 291 Ga. 376, 380 (3) (729 SE2d 393) (2012).[13] *446 While it maybe true that the administrative legitimation process has resulted in fewer illegitimate children in Georgia, it has produced a litany of unintended consequences and conflicts with statutory law, allowed boundless opportunities for fraud, and can arguably deny fathers and children their constitutionally protected rights. Our appellate courts have neither the means nor the authority to address the myriad of problems occasioned by this seemingly well intentioned but flawed process. As we noted in Sauls, supra, “this is for the General Assembly, not this court, to address.” Id. at 793, n. 1.
Decided July 16, 2014 —
Robinson & Blazer, John E. Robinson, Mark A. C. Robinson, for appellant.
Nathaniel H. Blackmon III, R. Victor Page, for appellee.

 The general statement in Allifi v. Raider, 323 Ga. App. 510, 512 (746 SE2d 763) (2013) (physical precedent only), that “[a] father’s right to legitimate his child is absolute, subject only to the qualification that the natural mother may object,” is not binding precedent, Court of Appeals Rule 33 (a), and is based upon a 1974 decision construing former Ga. Code Ann. § 74-103.

 I acknowledge with thanks the contributions of James B. Outman, Esq. with regard to the legislative history of the administrative legitimation process, as well as some of the problems it has created. James B. Outman, Adoption Law Update, Institute of Continuing Judicial *443 Education, July 24, 2013; James B. Outman, Special Topics in Adoption Law & Practice in Georgia, Institute of Continuing Legal Education, November 7, 2008.

 The Georgia Department of Human Resources and the Office of Child Support Services supported this legislation, but the latter acknowledged in testimony during the 2008 legislative session that while the number of illegitimate children in Georgia had decreased after the 2005 enactment, the amount of child support received on their behalf did not increase. Id. at 3.

 The majority correctly notes that Ridley has not raised below or on appeal a contention that an acknowledgment of legitimation satisfies or renders unnecessary the requirements set forth in OCGA § 53-2-3. It is also correct that neither OCGA § 19-7-22 (g) (2) nor OCGA § 19-7-46.1 specifies that a voluntary acknowledgment of paternity or legitimation obviates those requirements. But the obvious conflicts, as well as all the other problems noted here, exist whether raised by this appellant or by others in the future.

 This conclusion is supported by the 2008 amendment, which added the provision that the making of a false statement on the voluntary acknowledgment of legitimation “shall be punishable as an act of false statements and writings under Code Section 16-10-20,” OCGA § 19-7-21.1 (f), as well as the revised form promulgated by the Department of Vital Records, which provides a notary certificate form for each signature. But it seems altogether unlikely *444 that an oath is administered and the form signed in the presence of a notary in every instance, particularly in the environment of a hospital maternity department. Outman, Adoption Law Update, supra, at 4. Nor does it seem likely, in my opinion, that any violation of this requirement would ever be prosecuted.

 I take this opportunity to correct a misstatement in Sauls. While that case was decided in 2012, the paternity acknowledgment was executed in 2005 and thus fell under OCGA § 19-7-22 (g) (2) rather than OCGA § 19-7-21.1.

 A determination of paternity may be set aside by a superior court only in a child support action and under strictly limited circumstances, and only when the father was unaware that he was not the biological father and has not “[s]igned a voluntary acknowledgment of paternity as provided in Code section 19-7-46.1.” OCGA § 19-7-54 (b) (5) (F). It appears that a collateral attack based upon fraud, false swearing, mistake, or evidence newly discovered by a third party may be the only available method to declare an administrative acknowledgment of paternity and legitimation void when it is clear that it has been signed by a nonbiological father. See generally In re White, 254 Ga. 678 (333 SE2d 588) (1985) (mistake); see also Venable v. Parker, 307 Ga. App. 880, 884 (706 SE2d 211) (2011) (Dillard, J., concurring fully and specially).