**THIRD DIVISION**
**ELLINGTON, P. J.,**
**ANDREWS and RICKMAN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**March 1, 2018**

# In the Court of Appeals of Georgia

A17A1805. JOHNSON v. HAUCK.

RICKMAN, Judge.

In this relative adoption case brought pursuant to OCGA § 19-8-10 (b), the biological mother of the minor child at issue appeals from the superior court's final judgment and decree of adoption ("the decree"), which terminated her parental rights and granted the maternal grandmother's petition to adopt the child.[1] The mother contends, among other things, that the adoption petition was legally insufficient and that the superior court violated her due process rights in refusing her request for appointed counsel. We agree that the adoption petition failed to meet the statutory requirements; therefore, we vacate the decree and remand this case for additional

---

[1] The superior court also terminated the parental rights of the child's biological father; the father, however, is not party to this appeal.

proceedings consistent with this opinion. For the purposes of remand, we conclude that the superior court did not violate the mother's due process rights when it denied her motion for the appointment of legal counsel and address two additional procedural errors in order to prevent their recurrence.

> On appeal of a decision terminating parental rights, we determine whether after viewing the evidence in the light most favorable to the appellee, any rational trier of fact could have found by clear and convincing evidence that the natural parent's rights to custody have been lost. We defer to the [superior] court's findings unless the clear and convincing standard is not met. In matters of adoption, the superior court has a very broad discretion which will not be controlled by the appellate courts except in cases of plain abuse.

(Citations and punctuation omitted.) *Ray v. Denton*, 278 Ga. App. 69, 70 (1) (628 SE2d 180) (2006).

The scant appellate record shows as follows. The mother gave birth to the minor child in August 2013, and both the mother and the child were determined to have illegal drugs in their systems. The juvenile court issued an order stating that "[a]ll the parties agreed it is in the best interest of the child to be in [the grandmother's] permanent custody," and consequently awarded custody to her. In

2

November 2014, the grandmother filed a petition to adopt the child in the superior court.

The superior court conducted a hearing on the adoption petition, during which the mother appeared pro se. As the hearing commenced, the court noted for the record that it had "received numerous phone calls and . . . correspondence from [the mother] . . . requesting among other things . . . that she be given counsel." After recognizing this was an adoption proceeding in the superior court rather than a termination proceeding in the juvenile court–for which the mother would have a statutory right to counsel–the judge denied the mother's request to appoint her an attorney.[2]

Thereafter, the mother moved for a continuance so that she could retain counsel. The court refused to postpone the hearing after stating that the mother "should have already done that."[3]

---

[2] Although the issue was not addressed at the hearing, we will assume for the purposes of this opinion that the mother was indigent. She was determined to be so for the purposes of appeal.

[3] The hearing at issue was conducted two months before it was originally scheduled, after the grandmother's counsel "took advantage" of an opening on an earlier hearing calendar.

The hearing proceeded. The mother and the grandmother were the sole witnesses,[4] and the entirety of the substantive information gleaned from them is as follows. The mother had been forbidden from having any contact or communication with the child since his birth.[5] The grandmother testified that she was given custody of the child at the hospital and had been his sole caregiver since that time. She lived with the child in a rental home with her 11-year-old son, with whom the child had bonded, and the child suffered from neurological and other problems allegedly related to the mother's drug use during pregnancy.[6]

The mother testified that she had been living in an apartment for the last five months with the child's biological father, and that she had been working for three

---

[4] The biological father attended the hearing and the mother expressed her intention to call him as a witness, but did not do so.

[5] The grandmother refused to allow interaction of any kind between the mother and child, and the grandmother's counsel stated that the mother had requested that the juvenile court grant her visitation, but that request was denied in an unwritten order during the legitimation proceedings.

[6] No affidavits, medical records, or other evidence was presented as to the child's medical condition. The grandmother testified that the child's doctors had made an initial determination that his health problems were related to the mother's drug use during her pregnancy, and therefore referred him to a neuro-behavioral and drug exposure specialist. The child had just completed the intake process at the time of the hearing.

months. She admitted, under questioning by the judge, that of the 12 months immediately preceding the filing of the petition, she had been incarcerated for five months and had not worked or provided any financial support for the child during any of that 12-month period. She offered the superior court copies of harassing emails and facebook posts that allegedly came from the grandmother and allegedly resulted in the child's father losing his job, and a copy of a police report that she filed to stop the harassment.[7] And she stated that, "I think . . . that my child shouldn't be adopted by [the grandmother] because I want to be part of his life. I know that if she does adopt him I will never have contact with him or her or anyone else in my family."[8] The mother otherwise made no objections, conducted no cross-examination, and called no witnesses.

Based entirely upon the information set forth above, the superior court terminated the mother's parental rights and granted the adoption petition pursuant to

---

[7] None of the documents offered by the mother were included in the appellate record. At the hearing, the mother also presented documents allegedly reflecting harassment from the grandmother's ex-husband, to whom the grandmother was married throughout most of the pendency of this case but from whom she had recently divorced. The grandmother's counsel objected to the evidence and the superior court excluded it as hearsay.

[8] During the hearing, the superior court acknowledged the "very difficult and sad relationship or lack thereof" between the mother and grandmother.

5

OCGA § 19-8-10 (b) (2). In its decree, the court held that the mother, without just cause, failed significantly to support the child during the 12-month period immediately preceding the filing of the adoption petition. The court credited and summarized the grandmother's testimony, then "adopt[ed] the findings of fact made by the [juvenile court] as to the best interests of the minor child as part of its determination that the adoption is in the best interests of the child at issue." This appeal follows.

1. The mother argues that the grandmother's petition was legally insufficient and failed to provide her the statutorily required notice of the nature of the proceedings. We agree.

Because this case ultimately involved a termination of parental rights, we begin by recognizing that "[t]here can scarcely be imagined a more fundamental and fiercely guarded right than the right of a natural parent to its offspring." *Nix v. Dept. of Human Resources*, 236 Ga. 794, 795 (225 SE2d 306) (1976); see *In the Interest of J. M. B.*, 296 Ga. App. 786, 789 (676 SE2d 9) (2009). Terminating a parent's rights to his or her child "is so drastic that it should be attended only by the most stringent procedural safeguards." *Sanchez v. Walker County Dept. of Family etc. Svcs.*, 237 Ga. 406, 411, 229 S.E.2d 66 (1976), disapproved of on other grounds, *In Interest of R. D.*

6

*F.*, 266 Ga. 294, 296 (3) (466 SE2d 572) (1996); see *In the Interest of J. M. B.*, 296 Ga. App. at 789.

In order to defend this stringently protected right, Georgia law mandates that ordinarily, the relative of a child who has living parents may adopt the child "only if each such living parent . . . has voluntarily and in writing surrendered to that relative . . . all of his or her rights to the child for the purpose of enabling that relative . . . to adopt the child." OCGA § 19-8-7 (a). The law nevertheless authorizes the superior court to terminate a biological parent's rights and allow a relative to adopt the child in a single action without the parent's surrender if there is clear and convincing evidence[9] that the parent, "for a period of one year or longer immediately prior to the

---

[9] At the hearing, the grandmother's counsel argued that the "clear and convincing" standard of proof applied to allegations made pursuant to subsection (a) of OCGA § 19-8-10, but that the lesser standard of proof, preponderance of the evidence, applied to allegations made pursuant to subsection (b) of that statute. The Supreme Court of Georgia, however, has made clear that "the due process clause of the Fourteenth Amendment requires that before a state may sever the rights of a parent in [her] natural child, the state must support its allegations of the parent's unfitness 'by at least clear and convincing evidence.'" *Thorne v. Padgett*, 259 Ga. 650, 651 (386 SE2d 155) (1989) (citing *Santosky v. Kramer*, 455 U. S. 745, 768 (IV) (102 SCt 1388, 71 LEd2d 599) (1982)) (analyzing the predecessor statute to OCGA § 19-8-10 (b)). It follows that the clear and convincing standard of proof necessarily applies to all allegations made in support of a petition for adoption filed pursuant to OCGA § 19-8-10, regardless of whether the petition is filed under subsection (a) or subsection (b). See OCGA § 19-8-10 (b); *Thorne*, 259 Ga. at 651; see also *In the Interest of Marks*, 300 Ga. App. 239, 245-46 (2) (b) (684 SE2d 364) (2009) (applying

7

filing of the petition for adoption, without justifiable cause, has significantly failed . . . [t]o provide for the care and support of that child as required by law or judicial decree," if the court also determines that "the adoption is for the best interests of that child." OCGA § 19-8-10 (b) (2).

To that end, OCGA § 19-8-13 (7) mandates that any petitioner alleging that a parent's rights to his or her child need not be surrendered or terminated prior to the filing of an adoption petition "shall allege facts demonstrating the applicability of Code Section 19-8-10." The law also requires that the parent be personally served with a copy of the conforming petition, and affords the parent the right to "appear in the pending adoption action and show cause why such parent's rights to the child sought to be adopted in that action should not be terminated by that adoption." OCGA § 19-8-10 (c).

---

a "clear and convincing" standard to the OCGA § 19-8-10 (b) analysis); *Smallwood v. Davis*, 292 Ga. App. 173, 175 (1) (664 SE2d 254) (2008) (same); *Sellers v. Sellers*, 277 Ga. App. 814, 816-17 (1) (627 SE2d 882) (2006) (same).

Apart from a single reference to OCGA § 19-8-10 (b) (2),[10] the petition in this case was devoid of any factual allegations "demonstrating the applicability" of that statute, as required by the express language of OCGA § 19-8-13 (7). Indeed, the petition failed to mention termination, much less set forth any reasons why the mother's parental rights should be terminated. "It is well settled that adoption laws must be strictly construed in favor of natural parents." (Citation and punctuation omitted.) *Hafer v. Lowry*, 320 Ga. App. 76, 78 (739 SE2d 84) (2013); see *V. L. v. E. L.*, 36 SCt. 1017, 1021 (II) (194 LE2d 92) (2016). Because the petition lacked the statutory requirements, it did not put the mother on notice of what allegations she needed to be prepared to defend against in order to show cause why her rights should not be terminated by allowing the adoption. See OCGA § 19-8-13 (7); *Smallwood v. Davis*, 292 Ga. App. 173, 176-177 (2) (664 SE2d 254) (2008); see also *In the Interest of Marks*, 300 Ga. App. 239, 246 n.4 (2) (684 SE2d 364) (2009).

As the appellate courts of this State have done repeatedly, "we emphasize that a judgment having such a final, ultimate and significant result as that of severing the

---

[10] The petition also included a reference to OCGA § 19-8-10 (a) (1) (abandonment) and OCGA § 19-8-10 (4) (2014) (failure to exercise proper parental care or control due to misconduct or inability), but likewise set forth no factual allegations supporting those grounds, which were not argued at the hearing.

9

rights of a parent to a child must conclusively show compliance with the statutory criteria prescribed as a condition precedent for such termination." (Citation and punctuation omitted.) *Dell v. Dell*, 324 Ga. App. 297, 301 (1) (748 SE2d 703) (2013); see *In re M. D. F.*, 263 Ga. App. 50, 51 (587 SE2d 199) (2003). Accordingly, we vacate the superior court's decree and remand this case for a new hearing.

2. Because it will be relevant on remand, we will address the mother's argument that her federal due process rights were violated by the superior court's denial of her request for appointed counsel.

Generally, civil litigants do not enjoy a constitutional right to appointed counsel. See *In Interest of B. R. F*, 299 Ga. 294, 297 (788 SE2d 416) (2016); see *Turner v. Rogers*, 564 U. S. 431, 441(III) (A) (131 SCt 2507, LEd2d 452) (2011). And despite the significance of the right involved, "no indigent parent . . . has a categorical constitutional right to the appointment of counsel" in termination proceedings.[11] *In Interest of B. R. F*, 299 Ga. at 298; see *Lassiter v. Dept. of Social*

---

[11] We take this opportunity to note that at first glance, *In Interest of C. H.*, 343 Ga. App. 1 (805 SE2d 637) (2017), may be read to imply a constitutional, as opposed to statutory, right to appointed counsel in a dependency action (or other termination proceeding). We caution practitioners, however, not to misread the holding in that case; *In the Interest of C. H*. did not involve a request for the appointment of indigent counsel. Rather, the case involved parents to a dependency proceeding who were completely deprived of their right to legal representation–whether appointed or

*Svcs. of Durham County, N. C.*, 452 U. S. 18, 31-32 (II) (C) (101 SCt 2153, 68 LEd2d 640) (1981).[12]

Nevertheless, Georgia's legislature has mandated that, in termination proceedings conducted under the Juvenile Code, an indigent parent has a statutory

otherwise. See id. at 10-11 (1) (b).

[12] Contrary to the mother's assertion, she was not entitled to appointed counsel under the holding of *Lassiter*. The *Lassiter* Court recognized that, under certain circumstances, the Due Process Clause of the Fourteenth Amendment may entitle an indigent parent to representation during a proceeding to terminate his or her parental rights. *See* 452 U. S. at 27 (II) (B) (holding that to make the determination as to whether due process requires the appointment of counsel in a termination proceeding, the court must conduct a balancing test to weigh "the private interests at stake, the government interests at stake, and the risk that the procedures will lead to erroneous decisions" and then "set their net weight in the scales against the presumption that there is a right to appointed counsel only where the indigent, if he is unsuccessful, may lose his personal freedom"). *Lassiter* and its Georgia progeny, however, have each involved cases initiated by state action. See *In the Interest of B. R. F*, 299 Ga. 294 (788 SE2d 416) (2016); *Miller v. Deal*, 295 Ga. 504 (761 Ga. 274) (2014); *Gibson v. Turpin*, 270 Ga. 855 (513 SE2d 186) (1999); *In Interest of M. G. W.*, 341 Ga. App. 475 (801 SE2d 102) (2017); *In the Interest of J. C.*, 334 Ga. App. 526 (779 SE2d 734) (2015); *In the Interest of S. M. B.*, 319 Ga. App. 125 (735 SE2d 122) (2012). Because this case was initiated by the grandmother as a private adoption action, we do not believe that the due process rights recognized in the holding of *Lassiter* were implicated. Further, although the Supreme Court of Georgia has not yet identified the proper case in which to consider whether the guarantee of due process under the Georgia Constitution affords more procedural rights–including an indigent parent's right to appointed counsel in a civil proceeding–than does the United States Constitution, the Court has stated in other contexts that "the process due under the United States Constitution and the Georgia Constitution is the same." *Miller,* 295 Ga. at 514, n.11 (2).

right to appointed counsel. See OCGA § 15-11-262 (a) ("A child and any other party to a proceeding under this article shall have the right to an attorney at all stages of the proceedings under this article."); *In Interest of B. R. F*, 299 Ga. at 298 (recognizing that, under the Juvenile Code, "the legislature has decided as a matter of statutory law that a parent is entitled to the appointment of counsel during termination proceedings if the parent is found to be indigent"); see also *Nix*, 236 Ga. at 795. As observed by the superior court, however, that same statutory protection was not extended to an indigent parent in adoption proceedings conducted pursuant to OCGA § 19-8-10, despite the fact that those proceedings may ultimately end in the termination of his or her parental rights. See OCGA § 19-8-1 et seq. But see *Dell v. Dell*, 324 Ga. App. 297 (748 SE2d 703) (2013) (physical precedent only).

The propriety of that legislative decision is not for this Court to decide. See generally *Commonwealth Inv. Co. v. Frye*, 219 Ga. 498, 499 (134 SE2d 39) (1963) ("[T]he legislature, and not the courts, are empowered by the Constitution to decide public policy, and to implement that policy by enacting laws."). Rather, the only issue before us is whether the mother had a constitutional or statutory right to the appointment of counsel during the adoption hearing, and the law dictates that she did

not. Consequently, the superior court's refusal to appoint her an attorney was not erroneous.[13]

3. We take this opportunity to address two additional issues in order to prevent error on remand.

(a) OCGA § 19-8-16 (a) provides that,

[p]rior to the date set by the court for a hearing on the petition for adoption, it shall be the duty of a child-placing agency appointed by the court or any other independent agent appointed by the court to verify the allegations in the petition for adoption, to make a complete and thorough investigation of the entire matter, including a criminal records check of each petitioner, and to report its findings and recommendations in writing to the court where the petition for adoption was filed.

In petitions filed pursuant to OCGA § 19-8-7, involving adoptions in which the parents voluntarily surrender their child to a relative, the court has the discretion to

---

[13] We note that the mother did have a constitutional right to be represented by paid counsel if she so chose. See Ga. Const., Art. I, Sec. I, Para. XII ("No person shall be deprived of the right to prosecute or defend, either in person or by an attorney, that person's own cause in any of the courts of this state."); *Nelms v. Georgian Manor Condominium Assn.,* 253 Ga. 410, 413 (321 S.E.2d 330) (1984). Because of our holding in Division 1, we need not address whether the superior court violated the mother's right to due process by failing to allow her the opportunity to retain an attorney after denying her motion to appoint one. See *In Interest of C. H.,* 343 Ga. App. at 10-11 (1) (b).

waive the inspection and report requirements. See OCGA § 19-8-16 (b). An inspection and report are mandated, however, in cases involving relative adoption petitions brought pursuant to OCGA § 19-8-10. See *Cafagno v. Hagan*, 213 Ga. App. 631, 632-33 (1) (b) (445 SE2d 380) (1994) ("OCGA § 19-8-16 (b) provides an exception only in relative adoptions where surrender or termination of parental rights has been obtained.").

Asserting that the adoption petition in this case was filed pursuant to OCGA § 19-8-7, the grandmother sought and received a waiver of the inspection and report requirements. But because this case was actually brought and granted pursuant to OCGA § 19-8-10, the statutorily-mandated inspection and report were required. See *Cafagno*, 213 Ga. App. at 632-633 (1) (b). Consequently, the requirements of OCGA § 19-8-16 (a) should not have been waived, and on remand the inspection and report should be completed. See id.

(b) In accordance with OCGA § 19-8-10 (b) (2), after determining that the mother significantly failed without justifiable cause to provide for the care and support of the child during the one-year period immediately preceding the filing of the petition, the superior court was required to assess whether granting the adoption was in the child's best interests. In the decree, the superior court summarized the

14

grandmother's testimony and accepted it as fact, then "adopt[ed] the findings of fact made by the [juvenile court] as to the best interests of the minor child as part of its determination that the adoption is in the best interests of the child at issue."

Contrary to the superior court's holding, the juvenile court never engaged in any substantive analysis to determine whether the child's best interests were served by placing him in the grandmother's custody. Rather, the juvenile court simply noted that "[a]ll the parties agreed it is in the best interest of the child to be in [the grandmother's] permanent custody." Because the parties do not all agree that adoption by the grandmother is in the child's best interest, the superior court was required to independently assess that issue. See OCGA § 19-8-10 (b) (2); *Ray v. Hann*, 323 Ga. App. 45, 50 (2) (746 SE2d 600) (2013) (vacating trial court's adoption decree and remanding case in part because "[t]he court's conclusion that adoption was in the child's best interest [was] lacking in particularity"); *Sauls v. Atchison*, 316 Ga. App. 792, 795 (2) (730 SE2d 459) (2012) ("The decree must present more than a mere legal conclusion which is not supported by mandatory findings of fact, or a dry recitation that certain legal requirements have been met.") (citation and punctuation omitted). On remand, the trial court should state with particularity any facts that

support its conclusion as to what is in the child's best interests. See *Ray*, 323 Ga. App. at 50 (2); *Sauls*, 316 Ga. App. at 795 (2).

For these combined reasons, we vacate the superior court's decree and remand this case for additional proceedings consistent with this opinion.

*Judgment vacated and case remanded. Ellington, P. J., and Andrews, J., concur.*